IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

|  |  |  |
|---|---|---|
| **RAUL ARCHULETA, ISAAC MARTINEZ,** | ) | |
| **TRINA SUAZO-MARTINEZ, DANIEL** | ) | |
| **FRANK, MICHELLE CORIZ, ADRIANNA** | ) | |
| **MARTINEZ, VALLERIE LAMBERT,** | ) | |
| and **SAM SPROW,** | ) | |
|  | ) | Case No. |
| Plaintiffs, | ) | |
|  | ) | |
| v. | ) | |
|  | ) | |
| **TRIAD NATIONAL SECURITY, LLC**, d/b/a | ) | |
| **LOS ALAMOS NATIONAL LABORATORY,** | ) | |
| and **THOMAS MASON**, Director of Los Alamos | ) | |
| National Laboratory, in his official capacity, | ) | |
|  | ) | |
| Defendants. | | |

## VERIFIED COMPLAINT

Plaintiffs, Raul Archuleta, Isaac Martinez, Trina Suazo-Martinez, Daniel Frank, Michelle

Coriz, Adrianna Martinez, Vallerie Lambert, and Sam Sprow, by and through counsel, complain

of Defendants, Triad National Security, LLC ("Triad"), d/b/a Los Alamos National Laboratory,

and Thomas Mason, as follows:

### NATURE OF THE ACTION

1.     This is an action for injunctive and declaratory relief and compensatory damages from

Defendants' vaccine mandate and its discriminatory treatment of religion in violation of: 1) the

Free Exercise Clause of the First Amendment to the U.S. Constitution; 2) the Equal Protection

Clause of the Fourteenth Amendment to the U.S. Constitution; 3) Title VII and the parallel

protections of the New Mexico State Human Rights Law; 4) the Americans with Disabilities Act;

and 4) the Religious Freedom Restoration Act. Defendants have mandated that all their employees

receive the COVID-19 vaccination. Defendants have approved religious exemptions for some employees, including Plaintiffs and others not before the Court, but have given with one hand and then taken back with the other by imposing a blanket, one-size-fits-all accommodation that places those employees for whom a religious exemption has been granted on indefinite leave without pay and stripping them of their benefits. Defendants' actions amount to a constructive termination. Defendants have further trampled on Plaintiffs' rights, science, and common sense by denying medical exemptions for those who have already recovered from the virus and so have natural immunity that is far more robust than any immunity to be gained from the vaccines.

2.      The Defendants' mandate was first announced on August 23, 2021 – the same day President Biden announced full FDA approval of the Pfizer Cominarty vaccine[1] and called on business leaders to impose vaccine mandates. Defendant Mason, Director of Los Alamos National Laboratory ("LANL"), said it was necessary because of the "rising COVID-19 case rates in northern New Mexico and beyond." In fact, the COVID-19 case rates on August 23 were approximately the same as they were in late January, and they have continued to fall since that date. Defendant Dr. Thomas Mason, President of Triad and Director of Los Alamos National Laboratory, further stated in his August 23 directive that three (3) unvaccinated employees of the Lab's 10,000 plus workforce had been hospitalized during the recent surge. While three unvaccinated hospitalizations apparently constituted a crisis, the termination of 185 employees on October 15 and exiling of another 153 placed on indefinite leave without pay as a result of the religious "accommodation" was cause for celebration. *See* 185 Employees Separate From Triad

---

[1] The Cominarty vaccine is not available in this country; the only Pfizer vaccine available in the United States continues to be the Pfizer-BioNTech vaccine, which has only been granted Emergency Use Authorization. *See, e.g,* Pfizer's COVID-19 Vaccine With Comirnaty Label Still Not Available in US ~ Same Formulation - C-VINE Network.

At Los Alamos National Lab Due To COVID-19 Vaccine Mandate – Los Alamos Reporter (stating that these numbers were "manageable" and "not a significant deviation from historical attrition"; quoting Director Mason: "The Laboratory is well positioned to meet our mission objectives now."). The vaccine is "mandatory for all regular employees, on-site contractors, and onsite subcontractors" and applies to employees working on-site and even to those teleworking (i.e., working from home). Nevertheless, guest scientists, contractors, subcontractors, and students who work off-site are not subject to the vaccine mandate. Dr. Mason assured the employees, however, that those "with a legal basis for an exception" to the mandate "will be considered on a case-by-case basis." Employees who signed up to get the vaccine, however, would be eligible for a drawing, the winner of which would receive a brand-new Ford F-150 pickup truck.

3.      On September 13, 2021, in response to over 300 comments and questions about the vaccine mandate and in lockstep with the White House, which had just issued the Executive Order mandating that all federal employees be vaccinated on September 9, 2021, Director Mason issued a new directive on medical and religious exemptions. The directive stated: "If a medical exemption is granted, the Laboratory will put in place mitigations that will protect the health and safety of the entire workforce consistent with our obligations under the Americans with Disabilities Act." Religious exemptions, however, would be handled differently:

> If a religious exemption is granted, the Laboratory will determine if the exemption can be reasonably accommodated while still protecting the health and safety of the rest of the workforce. However, if the Laboratory has not found an acceptable accommodation by October 15, **unvaccinated employees with religious exemptions may be placed on unpaid leave or may use vacation leave until an accommodation that will not unduly burden the Laboratory or other employees has been identified**.

Director Mason nevertheless once again reiterated that "[a]ccommodations will vary depending on individual job duties as well as factors such as the future course of the pandemic, the

3

surrounding community infection risk, and the ability of the Laboratory to mitigate the risk to an unvaccinated employee's co-workers."

4.      In its FAQ webpage, also published on September 13, 2021, LANL acknowledged that teleworking might be an acceptable accommodation:

> **Q: Is full-time teleworking an acceptable accommodation?**
>
> A: **Teleworking may form part of a temporary accommodation, but may not be appropriate for all employees seeking an exemption** – it will depend on the nature of their job responsibilities.  Decisions on teleworking are based on the ability to perform necessary job functions in a fully effective way as described in our telework pilot plans.

5.      One week later, on September 20, 2021, Director Mason issued an updated directive. He stated that "about 1,000" employees and contractors had received the vaccine since he first announced the mandate, and that "a small number of medical exemptions" had been granted, for which the Lab was "working to put in place appropriate accommodations" as required under the Americans with Disabilities Act. The Lab had also received "a larger number of religious exemption requests," but rather than attempt to accommodate them individually, as required under Title VII, Director Mason stated: "I have made the decision that **the only accommodation the Laboratory can provide at this time for those granted religious exemptions is to take vacation or Leave without Pay (LWOP) effective October 15**." He further stated that this draconian rule applied "to **all employees** regardless of duty station, **including those who are teleworking**."

6.      The Lab's one-size-fits-all religious "accommodation" is in fact no accommodation at all. On its face it utterly fails Title VII's requirement that the parties engage in an individualized interactive process to attempt to find a reasonable accommodation. The Lab refused to engage at all, instead issuing its edict without any regard for the different duties and locations of those granted a religious exemption. As the *en banc* Tenth Circuit has emphatically held, "[t]he

4

obligation to engage in an interactive process is inherent in the statutory obligation to offer a reasonable accommodation to an otherwise qualified disabled employee." *Smith v. Midland Brake, Inc., a Div. of Echlin, Inc.*, 180 F.3d 1154, 1172 (10th Cir. 1999) (en banc). Indeed, "[a] party that obstructs or delays the interactive process is not acting in good faith." *Beck v. University of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996) (quoted with approval in *Smith*, 180 F.3d at 1172).

7.     LANL exceeded performance expectations – due in no small part to the courageous and sacrificial efforts of its workforce – throughout the pandemic. In fact, Triad received a $10,000,000 increase in management fees for its performance during 2020. *See* "NM's National Lab managers rated     'very     good,'"     Albuquerque     Journal     Jan.     30,     2021 (https://www.abqjournal.com/2354311/nms-national-labs-managers-rated-very-good-ex-triad-gets-10-million-boost-in-fee-for-managing-lanl.html). Employees working on site wore masks, maintained social distancing, and underwent regular testing and self-assessment. In addition, eighty-five percent (85%) of LANL's workforce "made the transition to telework." *Id.*

8.     Accommodating these employees working from home would impose no hardship on Triad at all, let alone an undue hardship. Furthermore, accommodating employees working on site would not entail any undue hardship, because their having performed so well throughout the pandemic for the last eighteen (18) months shows that current precautions work. Yet Triad made no effort whatsoever to try and accommodate Plaintiffs or others granted religious exemptions, instead simply issuing a uniform indefinite leave without pay to all.

9.     By contrast, Triad carefully undertook individualized review of those granted medical exemptions. In a document entitled "New FAQ: updates on exemptions, accommodations, leave without pay," dated September 27, 2021, Triad admits that it discriminates against religion. LANL

admitted that accommodations it deems acceptable for employees granted *medical* exemptions would not be available to employees with a *religious* exemption:

> Q: Can the same "appropriate accommodations" that will be put in place for an employee with a medical exemption be put in place for an employee with a religious exemption?
>
> **A: No, medical exemptions fall under different rules and laws than religious exemptions**.

This statement is demonstrably untrue and constitutes discrimination against religion in direct violation of Title VII.

10.     The same document also intimated that those claiming a religious exemption faced imminent termination if they persisted in refusing to take the vaccine:

> **Q: Will employees that are granted a religious exemption and go on LWOP be subject to the current LWOP policy that does not guarantee their job after 30 days?**
>
> **A: Yes, employees granted a religious exemption** who are placed on a personal leave of absence **are not guaranteed a position at the end of a personal leave and there is no requirement for management to hold the job open**.

11.     The New FAQ document further refused to provide any indication of when the leave without pay ("LWOP") might end and religiously exempt employees be allowed to return to work:

> **Q: What is the goalpost that will indicate the LWOP requirement will end and people can expect to be called back into work at LANL?**
>
> **A: There isn't currently an estimate on how long this will last**. The Laboratory leadership team will base their decision regarding safe return to the workplace on the future state of the pandemic.

But the pandemic seems to have no end in sight, and despite the COVID numbers dropping steadily in the past few weeks Triad refuses to say what its criteria is for determining when the levels are low enough for employees on LWOP to return to work. Defendants' approach is designed to maximize the uncertainty and anxiety of those employees ready and willing to return to their jobs

in an effort to force compliance with their mandate despite recognizing that Plaintiffs and others have a bona fide religious objection to taking the vaccines.

12.      Plaintiffs move this Court for temporary and preliminary injunctive relief on the grounds that they will be harmed irreparably by loss of employment and professional standing as well as loss of their security clearances.

## JURISDICTION AND VENUE

13.      This action arises under the First and Fourteenth Amendments to the United States Constitution and is brought pursuant to 42 U.S.C. § 1983. This action also arises under federal statutory laws, namely 42 U.S.C. § 1985(3), 42 U.S.C. § 2000 BB-1, 42 U.S.C. § 2000e-2, and 42 U.S.C. § 12101, *et seq*.

14.      This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the Defendants reside in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

15.      This Court is authorized to grant declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, implemented through Rule 57 of the Federal Rules of Civil Procedure.

16.      This Court is authorized to grant Plaintiffs' prayers for temporary, preliminary, and permanent injunctive relief pursuant to Fed. R. Civ. P. 65 and 42 U.S.C. § 2000e-5.

17.      This Court is authorized to grant Plaintiffs' prayer for compensatory damages pursuant to 42 U.S.C. § 2000e-5.

18.      This Court is authorized to grant Plaintiffs' prayer for relief regarding costs, including a reasonable attorney's fee, pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5.

## THE PARTIES

**Plaintiffs**

19.    As more particularly alleged below, Plaintiffs herein are employed at LANL which employs thousands of employees and is therefore required to comply with the requirements of Title VII, which mandates the reasonable accommodation of sincere religious beliefs where it can be done without undue hardship to the Lab. All the Plaintiffs have sincere religious beliefs which compel them to refuse vaccination with the available COVID-19 vaccines, all of which employ aborted fetal cell lines in their testing, development, or production.

20.    Plaintiff Raul Archuleta has been employed at LANL for over twenty (20) years. He currently serves as an Enterprise Reporting Team Leader/Financial Systems Analyst. He has been working from home ("teleworking") since March 2020 and is part of the LANL Work from Home program. He has not been required to be on-site for any regular work activity, and it is anticipated that his team will continue working remotely in the future. In addition, Mr. Archuleta's line management supports his request for accommodation. Mr. Archuleta requested a religious exemption on or about August 30, 2021, which was granted on September 24, 2021. The memorandum informing him of his accommodation stated in pertinent part:

> **The accommodation the Laboratory is providing for those granted a religious exemption is to take vacation or Leave without Pay (LWOP).** The effective date of the implementation of the accommodation is October 15, 2021. . .
>
> **While in a LWOP status, you may not perform Laboratory work.** You will need to complete the Leave of Absence Checklist (form 942) and make arrangements with your manager to turn over your Laboratory badge, crypto-card, and other Laboratory property by October 15, 2021. **In addition, while on LWOP, your benefit premiums are not paid.** . . .
>
> **Because of the approval of this exemption and the accommodation, there will be no individual review of this decision.**
>
> Should you begin the vaccination series by October 1, 2021, you may continue working. If you begin the vaccination series after October 1, 2021but before October 15, 2021, you will be placed on vacation or LWOP until you provide proof

of full vaccination. **If you do not start the vaccination series by October 15, 2021 and decline the accommodation, you may choose to resign, or we will commence the termination process with an effective date of October 15, 2021.**

Mr. Archuleta sent a follow up email on September 30, 2021, again asking for a reasonable accommodation that would allow him to continue to work. On September 30, 2021, he received an email related to his appeal from LeAnne Stribley, Associate Lab Director of Business Services for LANL. In her response, Ms. Stribley states that LANL is "not differentiating accommodations for those teleworking versus those working on site." Neither Ms. Stribley nor anyone else at LANL has provided any reason for LANL's refusal to differentiate between teleworking and onsite employees, even though LANL has exempted guest scientists, contractors, subcontractors, and students who work remotely from the vaccine mandate. Mr. Archuleta also requested a medical exemption due to the fact that he has recovered from COVID-19 and so has natural immunity. That request was summarily denied on October 4, 2021, in a single sentence: "Request for COVID vaccine mandate medical exemption not approved." *Id.* No additional explanation was provided. Mr. Archuleta holds a high security clearance, which will be lost if he does not obtain emergency relief from this Court. Additionally, he stands to lose his health benefits for himself, his wife, his thirteen (13) year old daughter, and his two children in college, his pension, the prospect of lifetime health benefits, his accrued sick and vacation leave, promotional opportunities, and bonuses. Loss of his LANL health insurance may result in a break in ongoing medical, dental, and vision treatment for Mr. Archuleta and his family. This would include interruption in medical care currently being provided to diagnose and treat serious existing conditions. Mr. Archuleta will also suffer harm to professional relationships and reputation impacting his future employability at LANL and outside LANL in his current profession.

21.     Plaintiff Isaac Martinez has been employed at LANL for over twenty-two (22) years,

currently in the Explosives Engineering area. He is married with four children, two of whom are in college. In early September 2021, once the religious exemption form was made available, Mr. Martinez also submitted a request for religious exemption based upon his sincere religious beliefs and objection to taking any vaccine that used aborted fetal cells in its testing, development, or production. That request was granted, but of course the only accommodation was indefinite leave without pay. On September 30, 2021, Mr. Martinez sent a follow up email to Ms. LeAnne Stribley, Associate Lab Director of Business Services, asking for an interactive dialog to discuss whether a more reasonable accommodation was possible. To date, neither Ms. Stribley nor anyone else on behalf of Defendants has responded. In late September, Mr. Martinez also submitted a request for medical exemption based upon laboratory tests showing that he still had antibodies and thus had natural immunity to COVID-19 as a result of having had the virus previously. His request was denied. LANL's harsh "accommodation" has resulted in extreme pressure, fear, emotional stress, and financial uncertainty for Mr. Martinez and his family. Not only is he ineligible for merit pay raises, bonuses, and promotions, but he also stands to lose lifetime health benefits that would be vested after three and a half (3 and 1/2) more years at LANL. In addition, securing outside health insurance means he would lose coverage for any pre-existing health conditions he and his family currently have. He would also lose his existing life insurance coverage, dental, vision, and accidental insurance coverage. On top of all of that, Mr. Martinez stands to lose his security clearance, which he has held for twenty-one (21) years. His specialized job skills and experience will be nearly impossible to replicate in any other setting. Finally, Mr. Martinez is a lifelong New Mexican, and in all likelihood, will be forced to relocate out of state if terminated, thereby resulting in the loss not only of his job at LANL but also his long-established community ties and a side business he has spent years building up.

10

22.     Plaintiff Trina Suazo-Martinez has been employed at the Lab for the past sixteen (16) months as a Cost Accountant. She also worked at the Lab from 2002 through 2007. She has worked remotely pursuant to LANL's Telework Pilot Program since its inception, and in fact has never had an office on-site. She and her husband have four children ages 21, 19, 13, and 11. Ms. Suazo-Martinez and her family have long chosen for religious reasons not to take any vaccines. For the past thirteen (13) years, their children have not taken any vaccines either. They do not use antibiotics and generally avoid the use of all pharmaceutical products when dealing with infections, preferring to use holistic approaches consistent with their dependence on God and His healing power. They are also deeply committed to the issue of life, and they avoid any medical treatment or substance derived from aborted fetal lines, including testing, no matter how remote in time or causality. Accordingly, Ms. Suazo-Martinez applied for and was granted a religious exemption. On September 30, 2021, she emailed Ms. LeAnne Stribley, Associate Lab Director of Business Services at LANL, asking for an opportunity to discuss a more reasonable accommodation due to her circumstances. To date, neither Ms. Stribley nor anyone else at LANL has responded to her request. She also requested a medical exemption due to the fact that she had had COVID-19 and recovered, and so had natural immunity. In support of her request, she attached laboratory test results showing that she still had antibodies to COVID-19. Her request was denied on October 1, 2021. The Lab asserted (incorrectly) that "the scientific and public health consensus is that natural immunity wanes 60-90 days after infection" and that Mrs. Suazo-Martinez had submitted evidence of natural immunity eight (8) months previously. *Id.* As a result of the Lab's failure to accommodate Mrs. Suazo-Martinez, she will soon have to begin selling assets in order to make monthly payments on her home, outstanding medical bills, and provide for her family. She will lose her health insurance, promotional opportunities, and merit pay raises. Mrs. Suazo-

11

Martinez, who is a lifelong resident of northern New Mexico, will likely have to move her family out of state in order to find alternative employment. The situation is particularly traumatic for Mrs. Suazo-Martinez' two youngest children, ages 11 and 13. They cannot understand why their parents, who are such godly and decent people, are suddenly losing their jobs for being obedient to God. They see their parents preparing to sell their home and move they know not where.

23.    Plaintiff Michelle Coriz has been employed at LANL since 2005. Before that she had worked six (6) years at the Lab as a contractor. Ms. Coriz is an environmental compliance expert with an unusual specialty combining expertise in environmental, nuclear, and waste compliance. Ms. Coriz is married and has two children, aged 25 and 19. She is the main provider for her family. Ms. Coriz' supervisor is supportive of allowing her to continue working, but Defendant Mason and LANL management have taken the decision out of her hands. Ms. Coriz had given up her office for a hub station, has not been required to be on-site, and has been teleworking for several months; she has received outstanding performance reviews and holds a high security clearance with special authorities. Ms. Coriz is a devout Christian who strenuously objects to taking the vaccine on religious grounds for use of modified diseases and other biological debris like aborted fetal cells in testing, development, or production. Her spiritual belief is that her and her family's future health is in the hands of God and that she cannot take a vaccine. She applied for a religious exemption on September 27, 2021. Her request was denied without explanation on October 5, 2021, even though her request included a supporting letter from her Pastor. Ms. Coriz immediately appealed to Ms. Maura Shuttleworth on October 5, 2021, for reconsideration by the ALDBUS organization. Ms. LeAnne Stribley then granted approval of the appeal on October 7, 2021. As a result of LANL's "accommodation," Ms. Coriz stands to lose her security clearance and significant professional relationships. She and her family stand to lose their family life insurance coverage,

dental, vision, accidental insurance coverage, her accrued sick and vacation leave, life insurance policies, and lifetime health insurance coverage. Ms. Coriz and her husband, who live on a farm, will have to begin selling off their farm animals and other assets in order to meet their monthly financial obligations.

24.     Plaintiff Adrianna Martinez has been employed at LANL for one (1) year as a Research Tec 2 in the High Explosive and Science Technology group. Ms. Martinez is a devout Christian who strenuously objects to the vaccines and their having been tested, developed, or produced with fetal cell lines derived from procured abortions. Nevertheless, her team leader, Bryce Tappan, repeatedly interrogated her for an entire week concerning her religious beliefs, again and again questioning her and harassing her to change her mind about the vaccines. On one occasion his harassment was so severe that Ms. Martinez broke down and cried before many of her colleagues. When Ms. Martinez contracted COVID-19 in October 2020 shortly after starting work, she dutifully quarantined herself for fourteen (14) days, and even while suffering from the virus continued to work from home. No other employee became infected as a result of her having COVID. She requested a religious exemption on September 2, 2021, which was granted on September 24, 2021. She also submitted a request for medical exemption due to having already recovered from COVID and having natural immunity. That request was denied because "CDC does not allow for natural immunity as a substitute for vaccination status." As a result of the failure of Defendants to provide any genuine accommodation and the uncertainty of ever returning to work at LANL, Ms. Martinez and her husband may be forced to sell their home.

25.     Plaintiff Sam Sprow began working for LANL as a summer intern in May 2019. He relocated over 1000 miles from his home in Madison, Mississippi, leaving behind his friends and family to pursue an exciting career at LANL. Even though he was halfway through a Master's

13

degree program, he left his academic pursuits in order to join the team at LANL. He became a Research and Development Engineer 1 in November 2020. When Defendant Mason announced the vaccine mandate on August 23, 2021, Mr. Sprow spent the following weekend alone in the Santa Fe National Forest, fasting and praying, searching the Scriptures, and seeking God's guidance on what he should do. Being a devout Christian, and after much deliberation, he applied for a religious exemption on September 28, 2021, which was granted. As a result of LANL's harsh LWOP policy, Mr. Sprow has lost his medical benefits, will lose over 180 hours of paid sick leave, and stands to lose a career that he has patiently worked and sacrificed to build for over two (2) years. Mr. Sprow worked remotely from the spring to the fall of 2020 without any difficulty.

26.     Plaintiff Daniel Frank has been employed at LANL since 2009 and was a contractor for three (3) years before that. He is married and has one small child. Since April 2021, Mr. Frank has worked from home as part of LANL's Telework Pilot program. He has no office on-site and no need to visit the campus other than for periodic drug testing or equipment issues. He has always strived to do his very best for LANL and has in fact won awards for his hard work and been nominated for awards several times. But rather than being allowed to continue his good work to further LANL's mission, he is being forced to sit home and use up his vacation time while LANL considers whether to allow him to return to his job. Mr. Frank has lost sleep since the vaccine mandate was announced and has developed recurring headaches and high blood pressure as a result of LANL's punitive "accommodation" measures. As a sincere Christian who objects to any use of fetal tissue from aborted children in the testing, development, and/or production of the vaccines, Mr. Frank submitted his request for religious exemption on August 24, 2021, the day after Director Mason announced the vaccine mandate. He resubmitted his request using the LANL-developed form (which was not available on August 24) on August 31, 2021. He was contacted by an attorney

14

hired by LANL to address the religious exemption requests on September 9, 2021, and his request was then approved. Due to the harsh "accommodation" imposed by Triad, Mr. Frank has begun the process of a cash-out refinancing of his home in order to make ends meet financially, especially when his family loses their medical insurance. Mr. Frank stands to lose his security clearance at the end of ninety (90) days if not reinstated at LANL.

27.     Plaintiff Vallerie Lambert has worked for LANL for about five (5) years as an Administrative Assistant. She carries all the insurance for her family. Due to her religious convictions that compel her to refuse the vaccine, she has experienced discrimination and repeated harassment from her manager. For example, her manager told her that working from home as a religious accommodation would be unfair to her coworkers. Ms. Lambert successfully worked from home for well over a year, from March 2020 until September 2021. When discussing weekly testing with her manager, her manager stated this could all go away if she would just take the vaccine. She was also told that her pending promotion would probably not go through because of her refusal to take the vaccine. Within minutes of the September 20 directive being issued, in which Defendant Mason stated that the only accommodation that would be offered to those granted a religious exemption was indefinite leave without pay, Ms. Lambert's manager called her asking again what she was going to do. Her manager also commented on the fact that Ms. Lambert had some tattoos and asked why the vaccine was any different than the other substances she had put into her body previously. Ms. Lambert explained that her religious beliefs prohibited her from putting anything in her body that was developed using aborted fetal cells, and her manager asked how she knew the tattoo ink did not contain aborted fetal cells. Ms. Lambert filed a formal complaint with Employee Relations on September 22, 2021, about the harassment from her manager. Employee Relations refused to investigate the complaint because she was going to be

15

placed on indefinite leave without pay very soon. Ms. Lambert requested a religious exemption, which was granted on September 27, 2021, but the only accommodation was indefinite leave without pay. She will lose 144 hours of sick leave, be ineligible for merit pay raises and bonuses, and promotion opportunities. In fact, she was informed on October 20, 2021, that she was the top candidate for a position in another group, and they wanted to know if she was still interested in it. When she told them she was, but that she faced indefinite LWOP, they said they would have to re-list the position and fill it with someone else. Ms. Lambert has also suffered extreme pressure, fear, and grave financial uncertainty for herself and her family.

### Defendants

28.     Defendant Triad National Security, LLC is a limited liability company incorporated in Delaware. On or about June 8, 2018, it was awarded the management and operating contract for LANL by the U.S. Department of Energy's National Nuclear Security Administration, made effective on or about November 1, 2018. Triad consists of three principals, Battelle Memorial Institute, the Regents of the University of California, and the Texas A&M University System, each of whom owns an equal share of the LLC. Defendant Triad is a governmental actor subject to the restrictions of federal and state constitutional law. In addition to being 2/3 owned by governmental entities, Triad was formed for the sole purpose of managing LANL and advancing the Lab's missions, including enhancement of the U.S. nuclear weapons stockpile and protection of the nation from weapons of mass destruction. Triad manages LANL according to highly specific and complex requirements prescribed by the government under its contracts with the National Nuclear Security Administration and other laws. Compliance with these requirements is closely monitored and reviewed by the federal government. Triad relies entirely (or almost entirely) on governmental funding to conduct its operations; indeed, funding from the federal government to Triad has

exceeded $10 billion dollars since it was created in 2018.  Triad employees, like the Plaintiffs in this case, are required to pass national security background checks and required to hold specific security clearances.

29.      Defendant Dr. Thomas Mason is the President of Triad and serves as the Director of Los Alamos National Laboratory. He is being sued in his official capacity.

## BACKGROUND

30.      Triad's vaccine mandate was first announced on August 23, 2021. *See*  Exhibit 1, August 23, 2021, Directive ("LANL has decided to make vaccines mandatory for all regular employees, *on-site* contractors, and *onsite* (sic) subcontractors") (emphasis added). It does not apply to off-site contractors and sub-contractors, while subjecting off-site employees performing telework to the requirement of getting vaccinated. *Id.* ("This requirement will apply to all employees working on-site, *those teleworking*, and all new hires.") (Emphasis added).

31.      The vaccine mandate emerges in the context of an atmosphere of fear and irrationality. The unvaccinated are subjected to hostile treatment, continual testing, and constant attempts to induce them to violate their sincerely held religious beliefs and take the vaccine. Yet the vaccines are clearly not as effective as promised, and have been shown to incur risks of severe and even life-threatening side effects, including blood clots[2] and what the CDC admits is "a 'likely association' between a rare heart inflammatory condition in adolescents and young adults [under age 30] mostly after they've received their second Covid-19 vaccine shot…"[3]

---

[2] *Cf.* authoritative study in the prestigious journal *Nature*: "Antibody epitopes in vaccine-induced immune thrombotic thrombocytopaenia," July 7, 2021, *available at* https://www.nature.com/articles/s41586-021-03744-4.

[3] *See* Berkeley Lovelace, Jr., "CDC safety group says there's a likely link between rare heart inflammation in young people after Covid shot," CNBC, June 23, 2021, *available at* https://tinyurl.com/sse5zsr9.

32.     Further, the CDC now admits that the COVID vaccines do not prevent viral transmission or infection, especially by the "Delta variant,"[4] which is the overwhelmingly predominant variant of the disease currently.

33.     As things now stand, according to "public health authorities," the vaccinated can infect the unvaccinated, the unvaccinated can infect the vaccinated, both the vaccinated and the unvaccinated can infect each other, and everyone must wear masks indoors in "high transmission" areas – that is, virtually the entire country[5] – as if no one had been vaccinated at all.[6]  And with both the "fully vaccinated" and the unvaccinated still contracting COVID, "continuous" "booster shots" of the same vaccines, to which Plaintiffs have the same religious objections, are doubtless on the way, accompanied by further government mandates.

## COUNT I
### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### Religious Discrimination – Failure to engage in interactive dialog
### (42 U.S.C. § 2000e)

34.     Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1-33 above as if fully set forth herein.

35.     Plaintiffs hold sincere religious beliefs that preclude them from receiving a COVID-19 vaccine.

---

[4] Frank Diamond, *Infection Control Today*, "Vaccines Not as Effective against the Delta Variant, say CDC Data," August 25, 2021 @ https://www.infectioncontroltoday.com/view/vaccines-not-as-effective-against-delta-variant-says-cdc-data.

[5] *See* CDC Map at https://www.usatoday.com/in-depth/graphics/2021/07/29/cdc-mask-guidelines-map-high-covid-transmission-county/5400268001/.

[6] *See* "When You've Been Fully Vaccinated," https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html.

36.     Plaintiffs timely informed Defendants of those beliefs and requested a religious exemption from the vaccine mandate.

37.     Defendants refused to engage in the required interactive process with Plaintiffs regarding their religious accommodation requests and instead issued a blanket "accommodation" to all employees granted a religious exemption, without regard to their individual situations and the unique circumstances surrounding their particular workplaces and duties.

38.     Defendants failed to provide Plaintiffs with reasonable accommodations for their religious beliefs, as indefinite leave without pay is not a reasonable accommodation, especially where, as here, those granted medical exemptions were afforded genuine accommodations allowing them to continue working and receiving their salaries, and where some Plaintiffs are working from home, thereby occasioning no hardship on Defendants whatsoever. Indefinite leave without pay, especially under these circumstances, constitutes an adverse employment action. *See, e.g., Bilyeu v. UT-Batelle, LLC*, No. 3:21-cv-352, 2021 WL 4859932 (E.D. Tenn. Oct. 15, 2021) (granting TRO in part against government contractor operating Oak Ridge National Laboratory and enjoining lab from placing employees granted religious exemptions on indefinite leave); *Sambrano v. United Airlines, Inc.*, No. 4:21-cv-01074 (N.D. Tex. Oct. 12, 2021) (granting TRO against employer and enjoining it from placing employees on indefinite paid leave as religious accommodation).

39.     Defendants thereby discriminated against Plaintiffs because of their religious beliefs.

40.     Defendants' failure to provide genuine religious accommodations has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship to Plaintiffs from violation of their sincerely held religious beliefs and the occupational, professional, social, and economic consequences pleaded above.

41.     By failing to engage in the interactive process or offer any reasonable accommodation, Defendants' discriminatory actions were intentional and/or reckless and in violation of Title VII.

42.     Plaintiffs have filed or are in the process of filing charges with the EEOC complaining of Defendants' discriminatory actions. Although Plaintiffs' EEOC charges remain pending, this Court may exercise its equity jurisdiction to grant preliminary injunctive relief to preserve the status quo pending completion of the EEOC's administrative process.

## COUNT II
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### Religious Discrimination – Retaliation
### (42 U.S.C. § 2000e)

43.     Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1-33 above as if fully set forth herein.

44.     Plaintiffs engaged in protected activity when they requested religious exemptions from Defendants' vaccine mandate.

45.     Defendants' response to Plaintiffs' protected activity was the draconian threat of indefinite leave without pay, loss of medical benefits, loss of possible pay raises or bonuses, and likely termination, which constitutes an adverse employment action intended to force Plaintiffs and others claiming religious exemptions to forgo their religious beliefs and receive the COVID-19 vaccine. These actions constitute retaliation by giving Plaintiffs the false choice between vaccination and effective termination.

46.     Plaintiffs' religious beliefs and protected activity were the causes of Defendants' adverse employment action.

47.     By retaliating against Plaintiffs for engaging in protected activity, Defendants have violated Title VII. This violation has caused, is causing, and will continue to cause irreparable

20

harm and actual and undue hardship to Plaintiffs from violation of their sincerely held religious beliefs and the occupational, professional, social, and economic consequences as described above.

48.     Plaintiffs have filed or are filing charges with the EEOC complaining of these retaliatory actions. This Court may exercise its equity jurisdiction to grant preliminary injunctive relief to preserve the status quo pending completion of the EEOC's administrative process.

**COUNT III**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**(42 U.S.C. § 12101, et seq.)**

49.     Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1-33 above as if fully set forth herein.

50.     The Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"), protects employees against discrimination based upon disabilities, among other things.

51.     Plaintiffs Raul Archuleta, Isaac Martinez, Trina Suazo-Martinez, and Adrianna Martinez had contracted COVID-19 and recovered from it. These Plaintiffs now have natural immunity.

52.     These Plaintiffs informed Defendants of their disabilities and requested a medical exemption from the vaccine mandate. Defendants summarily denied Mr. Archuleta's request, and denied all of these other Plaintiffs' requests as well, albeit with a more detailed explanation.

53.     Natural immunity has been shown by numerous studies to be superior to the vaccine-induced immunity that is already fading. In addition, the COVID vaccines now available do not limit viral transmission, as shown by the rising demand for "booster shots" (including a fourth shot in Israel). Moreover, vaccinating a naturally immune person can do more harm than good by provoking a hyper-immune response.

54.     Defendants refused to engage in the interactive process with these Plaintiffs regarding their medical exemption requests.

55.     Defendants violated the ADA when they denied or effectively denied these Plaintiffs' exemption requests.

56.     Defendants thereby discriminated against these Plaintiffs because of their disabilities.

57.     Defendants' failure to provide medical exemptions has harmed and continues to harm these Plaintiffs.

58.     By failing to engage in the interactive process or offer any reasonable accommodation, Defendants' discriminatory actions were intentional and/or reckless, and in violation of the ADA.

59.     These Plaintiffs have filed or are filing charges with the EEOC complaining of these discriminatory actions. This Court may exercise its equity jurisdiction to grant preliminary injunctive relief to preserve the status quo pending completion of the EEOC's administrative process.

**COUNT IV**
**VIOLATION OF THE FREE EXERCISE CLAUSE**
**OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION**
**(42 U.S.C. § 1983)**

60.     Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1-33 above as if fully set forth herein.

61.     The Free Exercise Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits the State from abridging Plaintiffs' rights to free exercise of religion.

62.     Plaintiffs have sincerely held religious beliefs that compel them to refuse vaccination with abortion-connected vaccines.

63.     As shown above, Defendant is a state actor. Its actions as set forth herein were all undertaken in accordance with policies, practices, customs, and procedures created, adopted, and enforced under color of state law.

64.   Defendants' refusal even to attempt to genuinely accommodate Plaintiffs after purporting to grant their requests for exemptions discriminates against Plaintiffs (and others not before the Court) due to their sincerely held religious beliefs by forgoing any interactive dialog and by imposing harsh and punitive conditions on them solely because they have sought religious exemptions from the vaccine mandate.

65.   Defendants' actions impermissibly burden Plaintiffs' sincerely held religious beliefs, compel them to abandon their beliefs or violate them under coercion, and force Plaintiffs to choose between their religious convictions and their continued employment.

66.   Defendants' actions effectively strip Plaintiffs of the right to religious exemption by subjecting them to unduly harsh and punitive measures, including placing them on indefinite leave without pay, denying them benefits, opportunities for pay raises or bonuses, and constructively discharging them, while affording those granted medical exemptions genuine accommodation and allowing them to remain fully employed.

67.   Defendants' actions place Plaintiffs in an irresolvable conflict between compliance with the mandate and their sincerely held religious beliefs.

68.   Defendants' actions put substantial pressure on Plaintiffs to violate their sincerely held religious beliefs or face loss of their jobs, professional standing, security clearances, reputations, and the ability to support their families.

69.   Defendants' interpretation and application of the vaccine mandate is neither neutral nor generally applicable as it grants the possibility of medical exemptions for reasons of secular "health" and allows those medically exempt to continue working but sentences those granted religious exemptions to exile without pay or benefits and without any real hope of returning to work.

23

70.     Defendants' actions thus target Plaintiffs' religious beliefs for disparate and discriminatory treatment.

71.     Defendants' actions create a system of individualized accommodations for preferred exemption requests based on physical health while discriminating against requests for exemption and accommodation based on sincerely held religious beliefs.

72.     There is no legitimate, rational, or compelling interest in Defendants' exclusion of exemptions and accommodations for sincerely held religious beliefs, especially given the following facts: (a) those exempted for reasons of "health" are no less susceptible of contracting and spreading COVID (the prevention of which is the very reason for the vaccine mandate) than those who would be exempted for reasons of religion; (b) the available COVID-19 vaccines are clearly failing to prevent transmission or infection, so that "booster shots" are now being promoted; (c) even the vaccinated must continue to wear masks as if they were not vaccinated because they can still be infected *or infect others*; (d) naturally immune persons who have recovered from COVID have superior immunity and do not need vaccination; (e) vaccinating naturally immune people may harm them by causing a hyper-immune response; and (f) some Plaintiffs and many others not before the Court have been working from home for many months, for whom accommodation would cost Defendants nothing.

73.     Defendants' actions in denying genuine accommodations to Plaintiffs and others receiving religious exemptions are not the least restrictive means of achieving an otherwise permissible government interest, which could be achieved by the same protective measures (masking, testing, quarantining, etc.) already being required of the vaccinated and the unvaccinated alike for those on-site (including those exempted for health reasons), and by simply allowing those working from home to continue doing so.

74.     Defendants' actions have caused, are causing, and will continue to cause irreparable harm and actual and undue hardship to Plaintiffs from violation of their sincerely held religious beliefs and the occupational, professional, social, and economic consequences pleaded above.

75.     Plaintiffs have no adequate remedy at law to prevent the continuing violation of their constitutional liberties and sincerely held religious beliefs.

## COUNT V

## VIOLATION OF THE RELIGIOUS FREEDOM RESTORATION ACT
(42 U.S.C. §2000BB-1)

76.     Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1-33 as if fully set forth herein.

77.     The Religious Freedom Restoration Act, 42 U.S.C. § 2000BB-1, et seq., prohibits the government from substantially burdening a person's free exercise of religion even if it results from a rule of general applicability, unless the rule is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest.

78.     Defendants are government actors, as shown above. Their actions as set forth herein were all undertaken in accordance with policies, practices, customs, and procedures created, adopted, and enforced under color of state law.

79.     Defendants' actions in denying Plaintiffs and others any interactive dialog to discuss means for accommodating them and by imposing harsh and punitive measures on them such as leave without pay, the denial of medical coverage, denial of opportunity for pay raises or bonuses, and the prospect of imminent termination impose a substantial burden on Plaintiffs' exercise of religion.

25

80.     Even if Defendants' vaccine mandate and implementation were a rule of general applicability, which they are not, and even if they were in furtherance of a compelling governmental interest, they have not been applied in the least restrictive means.

81.     By failing to engage in interactive dialog with Plaintiffs and others given a religious exemption but doing so with those given a medical exemption and providing them accommodations that allow them to continue working, earning their salaries, receiving their benefits, and remaining eligible for pay raises and bonuses, Defendants have failed to further any compelling governmental interest by the least restrictive means.

82.     Defendants' actions have caused, are causing, and will continue to cause irreparable harm and actual and undue hardship to Plaintiffs from violation of their sincerely held religious beliefs and the occupational, professional, social, and economic consequences pleaded above.

83.     Plaintiffs have no adequate remedy at law to prevent the continuing violation of their constitutional liberties and sincerely held religious beliefs.

## COUNT VI
## VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION
### (42 U.S.C. § 1983)

84.     Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1-33 above as if fully set forth herein.

85.     The Fourteenth Amendment to the United States Constitution guarantees Plaintiffs' right to equal protection under the law.

86.     Defendants' actions in refusing to afford genuine accommodation to Plaintiffs and others claiming a religious exemption is an unconstitutional abridgment of Plaintiffs' right to equal protection, is not neutral, and specifically discriminates against Plaintiffs' sincerely held religious

beliefs by imposing discriminatory and unequal treatment as compared with the medical exemptions favored by the Defendants.

87.　Defendants' actions constitute an unconstitutional abridgement of Plaintiffs' right to equal protection because it treats Plaintiffs differently from similarly situated employees claiming medical exemptions solely on the basis of Plaintiffs' sincerely held religious beliefs.

88.　Defendants' actions in interpreting and applying the vaccine mandate and exemptions therefrom single out Plaintiffs and others for selective treatment based upon their sincerely held religious objections to the COVID-19 vaccines.

89.　Defendants have arbitrarily and capriciously denied Plaintiffs and others similarly situated the protection for religion and the requirement of religious accommodation under both the Human Rights Law of the State of New Mexico and the parallel protections of Title VII while leaving untouched protections under the same statutes for other protected classes, including by allowing exemptions and providing genuine accommodations for reasons of "health" but not religion.

90.　Further, Plaintiffs Raul Archuleta, Isaac Martinez, Trina Suazo-Martinez, and Adrianna Martinez have all previously had COVID or COVID-like symptoms and, on information and belief, have natural immunity at a level no less than, and likely far more than, the immunity purportedly offered by available COVID vaccines.

91.　There is no rational, legitimate, or compelling interest to justify Defendants' application of different standards to different, similarly situated groups of employees.

92.　Defendants' actions in providing genuine accommodations to those claiming medical exemptions while denying similar accommodations to those like Plaintiffs who claim religious exemptions discriminate between religion and nonreligion by allowing nonreligious exemptions to the vaccine mandate while effectively prohibiting religious exemptions.

27

93.     As applied by Defendants, the vaccine mandate is a "status-based enactment divorced from any factual context" and "a classification of persons undertaken for its own sake," which "the Equal Protection Clause does not permit." *Romer v. Evans*, 517 U.S. 620, 635 (1996). The vaccine mandate effectively "identifies persons by a single trait [religious beliefs] and then denies them protections across the board." *Id.* at 633.

94.     By allowing genuine accommodations for medical exemptions while denying them for religious exemptions, the vaccine mandate is a "disqualification of a class of persons from the right to seek specific protection [for their religious beliefs]." *Id.*

95.     "A law declaring that in general it shall be more difficult for one group of citizens than for all others to seek [an exemption from the COVID-19 vaccine mandate] is itself a denial of equal protection of the laws in the most literal sense." *Id.* Defendants' vaccine mandate is such a measure.

96.     Defendants' vaccine mandate and discriminatory application of accommodations has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship to Plaintiffs from violation of their sincerely held religious beliefs and the occupational, professional, social, and economic consequences pleaded above.

97.     Plaintiffs have no adequate remedy at law for the continuing deprivation of their rights under the Equal Protection Clause.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully pray for relief as follows as to all Counts:

(1)     A temporary restraining order and preliminary injunction restraining and enjoining the Defendants, their officers, agents, employees, attorneys and successors in office, and all other

28

persons in active concert or participation with them, from terminating or placing on indefinite leave without pay any employee who has received a religious exemption;

(2)     A permanent injunction restraining and enjoining the Defendants, their officers, agents, employees, attorneys and successors in office, and all other persons in active concert or participation with them, from terminating or placing any employee on leave without pay unless having first engaged in an individualized, interactive dialog concerning reasonable accommodation that would not cause Defendants an undue hardship;

(3)     A declaratory judgment declaring that Defendants' purported accommodation for those granted a religious exemption violates Title VII of the Civil Rights Act of 1964;

(4)     A declaratory judgment declaring that Defendants' refusal to grant a medical exemption for the natural immunity of Plaintiffs Raul Archuleta, Isaac Martinez, Trina Suazo-Martinez, and Adrianna Martinez violates the Americans with Disabilities Act;

(5)     A declaratory judgment declaring that Defendants' actions violate the Free Exercise Clause of the First Amendment by depriving Plaintiffs and others similarly situated of the free exercise of religion under a measure that is neither neutral nor generally applicable but rather favors secular over religious reasons for exemption from COVID-19 vaccination and specifically targets those granted religious exemptions;

(6)     A declaratory judgment declaring that Defendants' actions violate the Equal Protection Clause of the Fourteenth Amendment by subjecting Plaintiffs and others similarly situated to harsh and unwarranted treatment solely because of the religious grounds on which Plaintiffs seek protection;

(7)     An award of reasonable costs and expenses of this action, including a reasonable attorney's fee, in accordance with 42 U.S.C. § 1988 and other applicable law;

(8)    Prejudgment and post-judgment interest, as allowed by law; and

(8)    Such other and further relief as the Court deems equitable and just under the circumstances.

DATED: October 22, 2021.

Respectfully submitted,

LAW OFFICE OF ANGELO J. ARTUSO

BY: /s/Angelo J. Artuso
Angelo J. Artuso
P.O. Box 51763
Albuquerque, New Mexico 87181-1763
Telephone: (505) 306-5063
angelo@nmliberty.com

THOMAS MORE SOCIETY

By: /s/B. Tyler Brooks
B. Tyler Brooks[†]
N.M. Federal Bar No. 21-296
309 W. Washington St., Suite 1250
Chicago, Illinois 60606
Telephone: (312) 782-1680
btb@btylerbrookslawyer.com

[†] *Admitted in NC, SC, TN & MI.*

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he is a Plaintiff in the above action, that he has read the Complaint and that the information contained therein is true and correct. 28 U.S.C. §1746. 18 U.S.C. §1621.

Executed at Española, New Mexico on October 22, 2021.

Raul Archuleta

## **DECLARATION UNDER PENALTY OF PERJURY**

The undersigned declares under penalty of perjury that he is a Plaintiff in the above action, that she has read the Complaint and that the information contained therein is true and correct. 28 U.S.C. §1746. 18 U.S.C. §1621.

Executed at White Rock, New Mexico on October 22, 2021.

_____
Isaac Martinez

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that she is a Plaintiff in the above action, that she has read the Complaint and that the information contained therein is true and correct.  28 U.S.C. §1746.  18 U.S.C. §1621.

Executed at White Rock, New Mexico on October 22, 2021.

_____

Trina Suazo-Martinez

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he is a Plaintiff in the above action, that he has read the Complaint and that the information contained therein is true and correct. 28 U.S.C. §1746. 18 U.S.C. §1621.

Executed at Los Alamos, New Mexico on October 22, 2021.

_____

Daniel Frank

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that she is a Plaintiff in the above action, that she has read the Complaint and that the information contained therein is true and correct. 28 U.S.C. §1746. 18 U.S.C. §1621.

Executed at White Rock, New Mexico on October 22, 2021.

_____
Adrianna Martinez

## **DECLARATION UNDER PENALTY OF PERJURY**

The undersigned declares under penalty of perjury that she is a Plaintiff in the above action, that she has read the Complaint and that the information contained therein is true and correct.  28 U.S.C. §1746.  18 U.S.C. §1621.

Executed at Española, New Mexico on October 22, 2021.

*Vallerie Lambert*

_____

Vallerie Lambert