IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RAUL ARCHULETA, ISAAC MARTINEZ, )
TRINA SUAZO-MARTINEZ, DANIEL )
FRANK, MICHELLE CORIZ, ADRIANNA )
MARTINEZ, VALLERIE LAMBERT, )
and **SAM SPROW**, )
                                        )    Case No. 1:21-cv-01030 KWR/SCY
               Plaintiffs, )
)
                v. )
)
**TRIAD NATIONAL SECURITY, LLC**, d/b/a )
**LOS ALAMOS NATIONAL LABORATORY,** )
and **THOMAS MASON**, Director of Los Alamos )
National Laboratory, in his official capacity, )
)
                Defendants. )

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
<u>MOTION TO COMPEL ARBITRATION</u>**

Defendants' motion to compel arbitration [Doc. 12] should be denied for at least three reasons. First, the arbitration provisions contained in the Plaintiffs' respective employment agreements do not apply to the claims Plaintiffs have asserted in this case. Second, the at-will employment contracts themselves are invalid because they lack consideration, contain unlawful terms, and are contracts of adhesion. Third, the arbitration provision is unenforceable under New Mexico law.

Finally, even if the arbitration clause were enforceable, which it is not, it would not preclude entry of emergency injunctive relief.

**I.**     **The arbitration clause does not apply to Plaintiffs' claims**.

The arbitration provision provides, in relevant part:

> 19. Arbitration. I understand and agree that any dispute between the Company and I arising out of or related to my employment with the Company will be submitted to binding arbitration and that I and Triad waive the right to take any

> such dispute to court.  This includes any dispute relating to my employment with the Company, including any separation or termination.
>
> * * *
>
> In addition, ***this offer of employment will not prevent me from filing any administrative charge or complaint with any federal, state, or local administrative agency***, nor will the Company's offer of employment prevent me from participating in any forum administered by the United States Department of Energy.

Defendants' Motion to Compel Arbitration [Doc. 12] Exhibit 2 [Doc. 12-2] at 6 (employment agreement for Raul Archuleta) (emphasis added).  *Accord*, *id*., at 15 (employment agreement for Isaac Martinez); at 27 (employment agreement for Trina Suazo-Martinez); at 37 (employment agreement for Daniel Frank); at 46 (employment agreement for Michelle Coriz); at 58 (employment agreement for Adrianna Martinez); at 67 (employment agreement for Vallerie Lambert); and at 76 (employment agreement for Sam Sprow).

The Tenth Circuit, relying on U.S. Supreme Court precedent, has made it very clear that to compel arbitration of statutory claims, including claims for discrimination under Title VII, an arbitration provision must **<u>clearly express</u>** that statutory claims are included within its scope.  "As the law now stands, both individual employees and unions may prospectively agree with the employer to arbitrate all employment-related disputes, including statutory rights normally enforced through litigation, but *only so long as this intention is clearly expressed*."  *Mathews v. Denver Newspaper Agency LLP*, 649 F.3d 1199, 1205 (10th Cir. 2011) (emphasis added) (citing *14 Penn Plaza v. Pye*tt, 556 U.S. 247, 129 S.Ct. 1456, 1465 (2009) and *Gilmer v. Interstate/Johnson Lane Corp*., 500 U.S. 20, 26, (1991)); *see also Edinburg United Police Officers Ass'n v. City of Edinburg*, No. 7:20-CV-00137, 2020 WL 5642197, at *4 (S.D. Tex. Sept. 22, 2020) ("When an arbitration agreement *explicitly commits statutory claims to arbitration*, the arbitration agreement controls and statutory claims must be submitted to arbitration, whereas when an

arbitration agreement commits claims or disputes to arbitration that are *similar to* or even substantially *duplicative of* the rights secured under a statute or constitution, the arbitration agreement does *not* eliminate the plaintiff's right to seek judicial relief for violations of those statutory or constitutional rights, even if parallel with an arbitration claim.") (emphasis added).

In sum, because the arbitration clause does not expressly state that statutory claims are subject to arbitration, the arbitration provision contained in each Plaintiffs' employment agreement is inapplicable to the claims Plaintiffs make in this case. *See* Amended Verified Complaint [Doc. 9].

**II.     The at-will employment agreements are invalid because they lack consideration and mutuality, they contain unlawful terms, and they are contracts of adhesion**.

Assuming *arguendo*, that the arbitration provision applies to the Plaintiffs' claims, which it does not, the provision is not, as Defendants claim, "valid and enforceable." Motion [Doc. 12] at 7. Rather, the arbitration provision is invalid for at least three reasons, to wit: (i) it is not supported by consideration; (ii) it contains unlawful terms and is therefore invalid under New Mexico law; and (iii) it is part of a contract of adhesion.

### *The agreements are governed by New Mexico law.*

As a threshold matter, New Mexico law governs the determination whether there is a valid contract and agreement to arbitrate. In fact, Defendants' employment contract expressly states – in the paragraph immediately preceding the arbitration clause – that "[t]his Agreement will be governed by and construed in accordance with the laws of New Mexico without giving effect to any principles of conflict of laws that would lead to the application of the laws of another jurisdiction." Exhibit 2 [Doc. 12-2] at 4. *Accord*, *id*. at 15, 27, 37, 46, 57, 67 and 76. Thus, Defendants are mistaken in claiming that the Federal Arbitration Act applies. *See* Motion [Doc. 12] at 6 n. 3. In fact, the general rule notwithstanding a choice of law provision is that "whether

'there is an agreement to arbitrate' [is] . . . governed by state law. *Jaludi v. Citigroup*, 933 F.3d 246, 254 (3d Cir. 2019) (quoting *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009)). Additionally, where, as here, the arbitration clause does not delegate the arbitrability question to an arbitrator, that question is for the Court in the first instance. *See Henry Schein, Inc. v. Archer & White Sales, Inc*., 139 S. Ct. 524, 527 (2019) ("The Act *allows* parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes.") (citations omitted) (emphasis added); *see also Garcia v. Din Tai Fung Rest., Inc*., No. 20-CV-02919-BLF, 2020 WL 6822909, at *4 (N.D. Cal. Nov. 20, 2020) (unless "the parties clearly and unmistakably provide" for arbitrability question to be decided by arbitrator it is for court to decide).

### *The agreements are not supported by consideration and mutuality*.

"The presumption in favor of arbitration disappears when the parties dispute the existence of a valid arbitration agreement." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995). "[A]n arbitration clause is enforceable and valid unless there are legal or equitable grounds for revoking it." *Shaw v. Kuhnel Associates, Inc.,* 102 N.M. 607 (N.M. 1985). Both legal and equitable grounds here warrant revoking the arbitration clause.

In *Board of Educ. v. James Hamilton Const. Co.*, the New Mexico Court of Appeals set forth the two basic principles of contracts - consideration and mutuality of obligations.

> It is elemental "that the essence of a valid agreement is consideration." *Sierra Blanca Sales Co. v. Newco Indus., Inc.*, 88 N.M. 472, 474, 542 P.2d 52, 54 (Ct.App. 1975), *rev'd on other grounds sub nom. Fortuna Corp. v. Sierra Blanca Sales Co.*, 89 N.M. 187, 548 P.2d 865 (1976); *cf. Knoebel v. Chief Pontiac, Inc.*, 61 N.M. 53, 57, 294 P.2d 625, 628 (1956) (holding that conditional sales contract without consideration is unenforceable). A promise of one party may be consideration for the promise of the other party, but "[e]ach promise is in need of consideration to be binding and enforceable." *Acme Cigarette Servs., Inc. v. Gallegos*, 91 N.M. 577, 581, 577 P.2d 885, 889 (Ct.App.

> 1978). Consideration adequate to support a promise is, therefore, essential to the enforcement of a contract. *Romero v. Earl*, 111 N.M. 789, 791, 810 P.2d 808, 810 (1991). In order to be binding as sufficient consideration, a promise must be "lawful, definite and possible." *Sanders v. Freeland*, 64 N.M. 149, 152, 325 P.2d 923, 925 (1958).

1994-NMCA-168, ¶15, 119 N.M. 415, 419.

> A valid contract must possess mutuality of obligation. *Williams v. Waller*, 51 N.M. 180, 184, 181 P.2d 798, 800 (1947). Mutuality means both sides must provide consideration. *See Vanzandt v. Heilman*, 54 N.M. 97, 107, 214 P.2d 864, 870 (1950); *see also* 3 Lord, *supra*, § 7:14, at 287-90 (discussing consideration requirement). "It is also elementary that a contract, which leaves it entirely optional with one of the parties to perform, is not founded on mutual promises." *Acme*, 91 N.M. at 581, 577 P.2d at 889; *see also Berry v. Walton*, 366 S.W.2d 173, 173-74 (Ky.Ct.App. 1963) (stating that contract placing no obligation on mineral lessee except payment of royalties on minerals actually removed, lacked mutuality). A purported promise that actually promises nothing because it leaves the choice of performance entirely to the offeror is illusory, and an illusory promise is not sufficient consideration to support a contract. *See Interchange Assocs. v. Interchange, Inc.*, 16 Wn. App. 359, 557 P.2d 357, 358 (1976); *see generally* 3 Lord, *supra*, § 7:7, at 88-89 (stating that illusory promise cannot serve as consideration). As we have indicated, because Buyer's promise to perform under the Agreement and Instructions was entirely at its discretion, any consideration contained in such a promise would be illusory. *See Andreoli v. Brown*, 35 Ohio App.2d 53, 299 N.E.2d 905, 906 (1972); *cf. Commercial Movie Rental, Inc. v. Larry Eagle, Inc.*, 738 F. Supp. 227, 230-31 (W.D.Mich. 1989) (finding promise to be illusory where offeror could never be held liable for failure to perform).

*Id.*, at ¶19, 119 N.M. 415, 420.

In this instance, Defendant Triad National Security, LLC ("Triad"), gave no consideration for the contract of employment. The contract itself states it is an "at will" employment contract and neither party is bound to continue it. *See* Exhibit 2 [Doc. 12-2] at 13 ("I understand and agree that my employment with the Company is at will and for no specific duration."). Under the plain terms of the Agreement, Defendants, within seconds of signing, could terminate Plaintiffs' employment or Plaintiffs could have refused to perform. Such a contract lacks mutuality of obligations.

"An at-will employment contract is illusory because neither party is bound to the promise of continued employment." *Ireland v. Franklin*, 950 S.W.2d 155, 158 (Tex. App. 1997); *cf. Heye v. American Golf Corp.*, 2003-NMCA-138, ¶12, 134 N.M. 558 ("'A purported promise that actually promises nothing because it leaves the choice of performance entirely to the offeror is illusory, and an illusory promise is not sufficient consideration to support a contract.'" quoting *Board of Educ. v. James Hamilton, supra*); *see also, Piano v. Premier Distributing Co.*, 137 N.M. 57, 60-61 (N.M. Ct. App. 2005).

The issue of the enforceability of arbitration clauses in at will employment contracts has been addressed by several New Mexico decisions. In *Piano v. Premier Distributing Co.*, *supra*, the court held that an arbitration clause signed by an employee was unenforceable because the employment was at will. In *Piano* the employee was already an at will employee, just like many of the Plaintiffs here, when she signed the arbitration agreement. The Court stated:

> Defendant argues that in exchange for Plaintiff's promise to submit her disputes to binding arbitration it allowed her to retain her job. However, Plaintiff was an at-will employee before she signed the Arbitration Agreement and she remained an at-will employee after she signed the Arbitration Agreement. The implied promise of continued at-will employment placed no constraints on Defendant's future conduct; its decision to continue Plaintiff's at-will employment was entirely discretionary. *See Bd. of Educ.*, 119 N.M. at 420, 891 P.2d at 561; *see also Heye*, 2003-NMCA-138, ¶ 15, 134 N.M. 558, 80 P.3d 495. ***Therefore, this promise was illusory and not consideration for Plaintiff's promise to submit her claims to arbitration***. *See id.* ¶ 16 (stating continued employment is not consideration for an arbitration agreement); *see also Salazar*, 2004-NMSC-013, ¶¶ 3, 16, 135 N.M. 447, 90 P.3d 466 (stating that an arbitration agreement, "made `in consideration of continued employment and the mutual agreement to arbitrate claims,'" was illusory); *accord Poole v. Incentives Unlimited, Inc.*, 338 S.C. 271, 525 S.E.2d 898, 900 (Ct.App. 1999) ("The promise of continued employment was illusory because even though [the employee] signed the covenant, [the employer] retained the right to discharge her at any time."), *aff'd*, 345 S.C. 378, 548 S.E.2d 207 (S.C. 2001).

2005-NMCA-018, ¶8, 137 N.M. 57.

*Heye, supra,* also involved an at will employee who signed an arbitration agreement that was part of an employment handbook/contract that allowed the employer to modify the practices

6

or policies in its sole discretion. The New Mexico Court of Appeals held that since the employer could terminate the provisions in the handbook, it was not a binding agreement, and the arbitration clause was unenforceable.

In this case, six of the eight Plaintiffs worked at LANL long before Triad was awarded the contract to manage the Lab in 2018. *See, e.g*., Memorandum in Support of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction [Doc. 5], Exhibit 1 [Doc. 5-1] at 1 (Raul Archuleta has been employed at LANL for over 20 years); Exhibit 2 [Doc. 5-2] at 1 (Isaac Martinez has been employed at LANL for over 22 years); Exhibit 3 [Doc. 5-3] at 1 (Trina Suazo-Martinez has been employed at LANL for over 7 years); Exhibit 5 [Doc. 5-5] at 1 (Daniel Frank has been employed at LANL since 2009); Exhibit 6 [Doc. 5-6] at 1 (Michelle Coriz has been directly employed at LANL since 2005); and Exhibit 8 [Doc. 5-8] at 1 (Vallerie Lambert has been employed at LANL for over 5 years).

The employment agreements on which Defendants rely, therefore, were not new employment agreements, but rather continuations of long pre-existing employment with a new contractor. Even for the two Plaintiffs who started employment after Triad was awarded the LANL contract, there is no logical reason that their at will employment agreements with an arbitration provision are supported by anymore consideration than the other Plaintiffs' agreements.

### *The at-will employment agreements are contracts of adhesion*.

Finally, the at will employment contract between the parties is a standard adhesion contract.

> An adhesion contract has been defined as such a contract, due to the disparity in bargaining power between the draftsman and the second party, must be accepted or rejected by the second party on a "take it or leave it" basis, *without opportunity for bargaining* and under such conditions that the "adherer" cannot obtain the desired product or service save by acquiescing in the form agreement.

7

*Albuquerque Tire Co. v. Mountain States Telephone & Telegraph Co.*, 102 N.M. 445, 448 (N.M. 1985).

The employment agreements were drafted by Triad, who had the much greater bargaining power and were presented to each Plaintiffs as a take it or leave it proposition. The arbitration provision is, therefore, unenforceable under New Mexico law.

**III**.    *The arbitration provision is unenforceable under the New Mexico law*.

The arbitration clause on which Defendants rely forbids class action suits. *See* Motion [Doc. 12-2] at 6, 16, 27, 37, 46, 58, 67, 75 ("I specifically waive the right to bring or participate in any class action against the Laboratory, either in court or before an arbitration."). This is in violation of New Mexico law.

Section 44-7A-5 NMSA 1978, of the New Mexico Uniform Arbitration Act provides, in relevant part:

> In the arbitration of a dispute between a . . . employee and another party, a disabling civil dispute clause contained in a document relevant to the dispute is unenforceable against and voidable by the . . . employee.

Section 44-7A-1(b)(4)(f) defines a disabling civil dispute clause as:

> a provision modifying or limiting procedural rights necessary or useful to [an] . . . employee in the enforcement of substantive rights against a party drafting a standard form contract . . . such as, by way of example, a clause requiring the . . . employee to: . . .
>
> (f)  decline to participate in a class action . . . .

In *Fiser v. Dell Computer Corp*., 2008-NMSC-046, 144 N.M. 464, the defendant sought to enforce an arbitration agreement that precluded the plaintiff from bringing a class action against the defendant. The New Mexico Supreme Court held that an arbitration clause precluding class actions was unconscionable and not severable.

8

> Because our invalidation of the ban on class relief rests on the doctrine of unconscionability, a doctrine that exists for the revocation of any contract, the FAA does not preempt our holding . . . . When a provision of a contract is determined to be unconscionable, we 'may refuse to enforce the contract, or [we] may enforce the remainder of the contract without the unconscionable clause, or we may limit the application of any unconscionable clause to avoid any unconscionable result . . . . Here, the class action ban is a part of the arbitration provision and is central to the mechanism for resolving the disputed between the parties; therefore, it cannot be severed. We decline to enforce the arbitration provision.

*Id*., ¶¶ 23 – 24 (citations and heading omitted).

### IV. Arbitration Does Not Preclude Injunctive Relief.

Even if arbitration of the underlying claims in the Amended Verified Complaint [Doc. 9] is held to be required, such a finding has no effect on Plaintiffs' request for injunctive relief. Defendants' request for a stay of all proceedings pending arbitration should, therefore, be denied.

Section 44-7A-5, NMSA 1978, specifically provides that an arbitration provision may be directed to the court under certain circumstances. Specifically:

> In the arbitration of a dispute between [an] . . . *employee* and another party, a disabling civil dispute clause contained in a document relevant to the dispute is unenforceable against and voidable by the . . . employee. If the enforcement of such a clause is at issue as a preliminary matter in connection with arbitration, the . . . ***employee may seek judicial relief to have the clause declared unenforceable in a court having personal jurisdiction of the parties and subject matter jurisdiction of the issue***.

Section 44-7A-7(b) provides that "[t]he court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate."

As noted, *supra*, Section 44-7A-1(b)(4)(f) defines a disabling civil dispute clause as:

> a provision modifying or limiting procedural rights necessary or useful to [an] . . . employee in the enforcement of substantive rights against a party drafting a standard form contract . . . .

In this instance, given the extreme urgency to have this matter addressed, a deferral to arbitration would provides none of the assurances that this Court can provide to hear an emergency

9

request for injunctive relief as soon as possible. The arbitration clause, therefore "limit(s) procedural rights necessary or useful to [an] . . . employee in the enforcement of substantive rights against a party [Triad] drafting a standard form contract. . . ." and would require Plaintiffs to "assert a claim against the party [Triad] who prepared the form in a forum that is .... more dilatory than a judicial forum established in this state for resolution of the dispute."  Section 44-7A-1(4)(a).

Courts have also long recognized that a plaintiff facing irreparable harm may seek injunctive relief pending arbitration. *See, e.g., Teradyne, Inc. v. Mostek Corp.,* 797 F.2d 43 (1st Cir. 1986) ("a district court can grant injunctive relief in an arbitrable dispute pending arbitration, provided the prerequisites for injunctive relief are satisfied."); and *Sauer-Getriebe KG v. White Hydraulics, Inc*. 715 F.2d 348 (7th Cir. 1983) (reversing the district court's denial of injunctive relief pending arbitration); and *Merrill Lynch, Pierce, Fenner & Smit, Inc. v. Bradley*, 756 F.2d 1048 (4th Cir. 1985) (affirming district court's grant of preliminary injunction pending arbitration).

Finally, the rules of the American Arbitration Association ("AAA"), are referenced in the arbitration provision drafted by Defendant. *See* Motion [Doc. 12], Exhibit 2 [Doc. 12-2] at 6 ("The arbitration will be administered by the American Arbitration Association (AAA) under its Employment Arbitration Rules and Mediation Procedures in effect at the time the claim is filed." These rules also contemplate interim relief entered by a court: "A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate." AAA Employment Arbitration Rules and Mediation Procedures, Rule 32, available at https://www.adr.org/sites/default/files/EmploymentRules_Web_2.pdf.

## CONCLUSION

For all the foregoing reasons, Defendants' Motion to Compel Arbitration [Doc. 12] should be denied.

Respectfully submitted,

LAW OFFICE OF ANGELO J. ARTUSO

By: /s/Angelo J. Artuso
Angelo J. Artuso
P.O. Box 51763
Albuquerque, New Mexico 87181-1763
Telephone: (505) 306-5063
angelo@nmliberty.com

THOMAS MORE SOCIETY

By: /s/B. Tyler Brooks
B. Tyler Brooks†
N.M. Federal Bar No. 21-296
309 W. Washington St., Suite 1250
Chicago, Illinois 60606
Telephone: (312) 782-1680
btb@btylerbrookslawyer.com
† *Admitted in NC, SC, TN & MI.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Amended Verified Complaint was served on all counsel of record by filing the same in the CM/ECF system this 28th day of October, 2021.

/s/ Angelo J. Artuso
Angelo J. Artuso