**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

RAUL ARCHULETA, ISAAC MARTINEZ,
TRINA SUAZO-MARTINEZ, DANIEL FRANK,
MICHELLE CORIZ, ADRIANNA MARTINEZ,
VALLERIE LAMBERT, and SAM SPROW,

        Plaintiffs,

  v.                                                 No. 1:21-cv-01030-KWR-SCY

TRIAD NATIONAL SECURITY, LLC,
*Doing business as Los Alamos
National Laboratory*, and
Dr. THOMAS MASON, *Director
Of Los Alamos National Laboratory, in his
Official capacity,*

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court upon Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction **(Doc. 4)** and Defendants' Motion to Compel Arbitration **(Doc. 12).** For the reasons stated below, the Court compels arbitration and declines to rule on the preliminary injunction motion. The motion to compel arbitration **(Doc. 12)** is **GRANTED.**

Plaintiffs are employees of Defendant Triad National Security, LLC ("Triad"). They seek injunctive relief to reinstate them to their employment positions after they were placed on leave pursuant to Defendants' mandatory vaccine policy. Plaintiffs assert that they have religious exemptions to the mandatory vaccine policy and argue that Defendants have violated their constitutional rights and federal statutory rights. Plaintiffs seek immediate injunctive relief, while

Defendants assert that these claims should be sent to arbitration. The Court will compel arbitration of this matter, including the pending preliminary injunction motion. The Court declines to issue temporary injunctive relief pending arbitration because Plaintiffs request mandatory injunctive relief that would grant them most of their requested relief prior to arbitration.

## BACKGROUND

In August 2021, Defendants announced a policy which required employees to get a COVID-19 vaccination by October 15, 2021. **Doc. 12-1 at 2.** Defendants offered medical and religious accommodations to the vaccine mandate. Plaintiffs, employees of Defendants, each received a religious accommodation. **Doc. 12-1 at 3.** On Friday, October 15, 2021, Plaintiffs were placed on leave "until an accommodation that will not unduly burden the operations at LANL or other employees has been identified." **Doc. 12-1 at 3.** It appears that each employee granted a religious accommodation was placed on leave. Those without remaining leave days were placed on leave without pay. Defendants have turned off Plaintiffs' access to Triad's computer systems, required Plaintiffs to turn in their equipment and security badges, and reassigned their duties to other employees. To reinstate them, Defendants would have to reissue them badges, computer, devices, cards, and keys. *Id.* It appears that six Plaintiffs are using their paid leave, while two are on leave without pay.

Defendants represent that they conducted an individualized assessment of all religious accommodation requests. **Doc. 23 at 8.** Defendants received 293 religious accommodation requests and approved 267 requests. Employees granted religious accommodations were placed on leave. Defendants represents that leave of absence was the only reasonable accommodation, as all employees are required to perform duties onsite. There are only 3 employees who have been given permanent medical accommodations.

On September 27, 2021, 34 identified and 81 anonymous "Doe" employees filed a case in New Mexico state court seeking an injunction against Defendants on similar grounds as in this case. *See Butters, et al., v. Mason, et al.*, Case No. D-132-cv-2021-00084 (First Judicial District, New Mexico). In that case Plaintiffs asserted that Defendants' vaccine mandate infringed on their constitutional rights and violated the New Mexico Human rights act. On September 29, the *Butters* Plaintiffs filed an emergency motion for *ex parte* restraining order or for a preliminary injunction prohibiting Defendants from enforcing its vaccine mandate.

On October 15, 2021, Judge Lidyard denied the motion for preliminary injunction after a hearing. He found that (1) the vaccine policy was a neutral rule of general applicability; (2) the vaccine policy does not violate the Free Exercise clause; (3) Defendants' policy does not violate the Fourteenth Amendment; (4) the vaccine policy does not violate religious rights under the New Mexico Human Rights Act; (5) the *Butters* Plaintiffs failed to demonstrate irreparable harm; and (6) the balance of equities tipped in Defendants' favor.

Following that decision, the *Butters* plaintiffs dismissed that case. The Plaintiffs in this case represent they were not *Doe* Plaintiffs in the *Butters* case.

Plaintiffs filed this case seven days after the state court's decision in *Butters*. Plaintiffs' complaint asserts the following claims:

- Counts I and II: Violation of Title VII;
- Count III: Violation of the Americans with Disabilities Act
- Count IV: Violation of the Free Exercise Clause of the First Amendment;
- Count V: Violation of the Religious Freedom Restoration Act; and
- Count VI: Violation of the Equal Protection Clause of the Fourteenth Amendment;

Plaintiffs seek a temporary restraining order and preliminary injunction to force Defendants to reinstate them to active employment.

3

The Court held a hearing on the motions on October 29, 2021. The motions in this case were fully briefed on November 5, 2021 and are now ready for decision.

## DISCUSSION

### I.     The Court will compel arbitration.

Defendants move to compel arbitration pursuant to an arbitration provision signed by both Defendants and Plaintiffs. The Court finds the motion to compel well taken and concludes that (1) the parties entered into a valid arbitration agreement and (2) the parties agreed to arbitrate arbitrability, including whether the claims in this case fall within the arbitration clause. Therefore, the Court will grant the motion to compel arbitration.

#### A.     Relevant Arbitration Standard.

The Federal Arbitration Act ("FAA") articulates a strong national policy in favor of arbitration and "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1983). Section 2 of the FAA places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63 (2010). While the FAA favors arbitration agreements, a legally enforceable contract is still a prerequisite for arbitration, and without such a contract, parties will not be forced to arbitrate. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944-45 (1995) (stating that the presumption in favor of arbitration is reversed when there is a dispute as to the existence of an agreement).[1] Thus, "the first task of a

---

[1] *See Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 977 (10th Cir. 2014) (". . . [B]efore the Act's heavy hand in favor of arbitration swings into play, the parties themselves must agree to have their disputes arbitrated") (emphasis in original); *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986) ("Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.") (internal quotation marks and citation omitted); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

4

court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir. 2002). "The issue of whether an arbitration agreement was formed between the parties must always be decided by a court, regardless of whether the alleged agreement contained a delegation clause or whether one of the parties specifically challenged such a clause." *Fedor v. United Healthcare, Inc.*, 976 F.3d 1100, 1105–06 (10th Cir. 2020).

The Federal Arbitration Act permits a party to move to compel arbitration when an opposing party refuses to arbitrate issues covered by a valid arbitration agreement. 9 U.S.C. § 4. "The party attempting to compel arbitration carries the burden of demonstrating a valid arbitration agreement." *Fundamental Admin. Sers., LLC v. Patton*, 504 Fed. App'x 694, 698 (10th Cir. 2012); *BOSC, Inc. v. Bd. of City Comm'rs of City of Bernalillo*, 853 F.3d 1165, 1177 (10th Cir. 2017) (noting that the moving party "bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement").

### B. Plaintiffs and Defendant Triad entered into valid arbitration agreements.

The Court concludes that Plaintiffs and Defendant Triad entered into a valid arbitration agreement. "[A]rbitration is a matter of contract…to determine whether a party has agreed to arbitrate a dispute," the court applies "ordinary state-law principles that govern the formation of contracts." *Jacks v. CMH Homes, Inc.*, 856 F.3d 1301, 1304 (10th Cir. 2017) (internal citations and quotation marks omitted). "[T]o determine whether the agreement to arbitrate is valid, courts look to general state contract law, with the caveat that state laws that are specifically hostile to arbitration agreements are preempted by the FAA." *Laurich v. Red Lobster Rest., LLC*, 295 F. Supp. 3d 1186, 1206 (D.N.M. 2017). Under New Mexico law, a legally enforceable contract requires the existence of an offer, an acceptance, consideration, and mutual assent. *Laurel*

*Healthcare, LLC,* 2013-NMSC-032, ¶ 42, 304 P.3d 409, 416.  As Defendants argue, each element of contract formation is satisfied here.

The arbitration provision provides in relevant part:

> **19. Arbitration.** I understand and agree that any dispute between the Company and I arising out of or related to my employment with the Company will be submitted to binding arbitration and that I and Triad waive the right to take any such dispute to court. This includes any dispute relating to my employment with the Company, including any separation or termination. The arbitration will be administered by the American Arbitration Association (AAA) under its Employment Arbitration Rules and Mediation Procedures in effect at the time the claim is filed.
> …
> The arbitrator is authorized to provide all remedies available in a court of law.
> …
> I specifically waive the right to bring or participate in any class action against the Company, either in court or before an arbitrator. Nothing in the Company's offer of employment will be read as preventing me from filing a claim under applicable workers' compensation, unemployment compensation statutes and/or claims under the Energy Employees Occupational Illness Compensation Program Act. In addition, this offer of employment will not prevent me from filing any administrative charge or complaint with any federal, state or local administrative agency, nor will the Company's offer of employment prevent me from participating in any forum administered by the United States Department of Energy.

**Doc. 12-2, Ex. B-1 at § 19.**

Initially, it is undisputed, and the record otherwise reflects, that there was an offer, acceptance and mutual assent.  Each plaintiff received an offer of employment and employment agreement, which contained the arbitration provision at issue in this case.  The Plaintiffs and the Defendants signed the employment agreements.  *See* **Doc. 12, Ex. A at ¶3-4, Ex. B1-B8.** Therefore, Defendants have shown there was an offer, acceptance and mutual assent to the arbitration provision.

Moreover, the arbitration provision is supported by consideration. Under New Mexico law,

> "A valid contract must possess mutuality of obligation. Mutuality means both sides must provide consideration." *Talbott v. Roswell Hosp. Corp.,* 2005–NMCA–109, ¶ 16, 138 N.M. 189, 118 P.3d 194 (internal quotation marks and citation omitted).

6

> "Consideration consists of a promise to do something that a party is under no legal obligation to do or to forbear from doing something he has a legal right to do." *Id.* (internal quotation marks and citation omitted). A promise that puts no constraints on what a party may do, and in reality promises nothing, is an illusory promise. *Id.* An illusory promise does not provide consideration to support a contract. *See Restatement* § 77 cmt. a ("Where the apparent assurance of performance is illusory, it is not consideration for a return promise.").

*Sisneros v. Citadel Broad. Co.*, 2006-NMCA-102, ¶ 31, 140 N.M. 266, 274, 142 P.3d 34, 42

Here, Defendant Triad and Plaintiffs provided consideration by mutually agreeing to arbitrate all claims "arising out of or related to [their] employment" and expressly "waiv[ed] the right to take any such dispute to court." **Doc. 12, Ex. B1-B8, §18 or 19.** Both sides were bound by the arbitration provision, and neither party points to any language in the contract that would unilaterally give a party the ability to disregard the arbitration provision. Rather, the contracts appear to expressly provide that the agreement can only be amended if both sides agree. **Doc. 12-2, Ex. B-1 at 22** ("This Agreement may be amended only by a written agreement executed by each of the parties to this Agreement. No amendment or waiver of, or modification of any obligation under, this Agreement will be enforceable unless specifically set forth in a writing signed by the party against which enforcement is sought.").

Plaintiffs argue that the employment agreement and arbitration provision lack consideration, because employment was at-will. The Court disagrees. An arbitration provision which mutually binds the parties may provide consideration. *Sisneros v. Citadel Broad. Co.*, 2006-NMCA-102, ¶ 35, 140 N.M. 266, 275, 142 P.3d 34, 43 ("When Plaintiff's claim accrued, that is, when Citadel terminated his employment, Citadel was bound to arbitrate the dispute, just as Plaintiff was bound. The parties had mutual obligations to arbitrate."). In New Mexico, a mutually binding arbitration provision may supply consideration even in an at-will employment relationship. *Id.*; *Clark v. UnitedHealth Group*, No. 2018 WL 2932735, at *6 (D.N.M. June 12, 2018) (finding that arbitration agreements in the at-will employment context are enforceable if supported by

adequate consideration and "[c]learly such consideration exists when the parties mutually agree to arbitrate their disputes . . . ."); *Dougherty v. Bridgestone/Firestone, Inc.*, No. CV 05-603 RB/LCS, 2006 WL 8444484, at *9 (D.N.M. Jan. 11, 2006) ("Here, the parties' 'mutual promise to arbitrate' is consideration for their arbitration agreement."); *see also Williams-Jackson v. Innovative Senior Care Home Health of Edmond, LLC*, 727 F. App'x 965, 969 (10th Cir. 2018) (applying Oklahoma law, "mutual promises made by an employer and employee to arbitrate supply adequate consideration to support an arbitration agreement"), *citing Tinder v. Pinkerton Sec.*, 305 F.3d 728, 734 (7th Cir. 2002) ("An employer's promise to arbitrate in exchange for an employee's promise to do the same constitutes sufficient consideration to support the arbitration agreement." (interpreting Wisconsin law)).

Plaintiffs do not allege that the Defendants had the unilateral ability to modify or avoid the arbitration provision. This distinguishes this case from those cases cited by Plaintiffs. **Doc. 25 at 6-7,** *citing Piano v. Premier Distrib. Co.*, 2005-NMCA-018, ¶ 14, 137 N.M. 57, 62, 107 P.3d 11, 16 ("The Arbitration Agreement gives Defendant unilateral authority to modify the Arbitration Agreement. The Agreement does not require Defendant to seek Plaintiff's approval before altering the terms of the Arbitration Agreement; Defendant "remains free to selectively abide by its promise to arbitrate."); *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2002) ("We join other circuits in holding that an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory."). Rather, as explained above, the contract provided that both parties were bound to the contract, including the arbitration provision.

Plaintiffs argue that the class action waiver is not enforceable because it is unconscionable under New Mexico law and barred by New Mexico statutes. *See* NMSA §§ 44-7A-1, 5. Initially, the Court does not see how this argument is relevant, because Plaintiffs did not file this case as a class action.

Alternatively, the Court agrees with the Defendants that this class action waiver issue is not properly before the Court.  **Doc. 29 at 64-65.**  As Defendants assert, there is no *per se* rule prohibiting class action waivers under the Federal Arbitration Act, which may preempt contrary law.  *See, e.g., THI of New Mexico at Hobbs Ctr., LLC v. Patton*, 741 F.3d 1162, 1170 (10th Cir. 2014) (discussing New Mexico law preempted by the FAA).  Plaintiffs have not shown why the class action waiver in this case is unconscionable.  Therefore, the Court will not analyze this issue on its own.[2]

Plaintiffs also argue that the employment agreements should be disregarded because they are adhesion contracts.  The Court disagrees. The mere fact that this may be an adhesion contract does not *per se* render the contract unconscionable.  *Davis v. USA Nutra Labs*, 303 F. Supp. 3d 1183, 1196 (D.N.M. 2018) (an adhesion contract will be found unconscionable only if the "terms [therein] are patently unfair to the weaker party."); *Padilla v. State Farm Mut. Auto. Ins. Co.*, 2003–NMSC–011, ¶ 14, n.3, 668 P.3d 901, 907 n.3 ("While the Court of Appeals correctly characterized the policy as a contract of adhesion. . . . we note that this fact alone is insufficient to invalidate the [disputed] provision.").  Plaintiffs do not explain why the adhesive nature of the contracts would render them unconscionable, or why the mutually binding arbitration provision is patently unfair.

### C.     Dr. Mason may enforce the arbitration provisions.

Defendants also move to compel to arbitration the claims against Defendant Dr. Mason.  In their response, Plaintiffs do not differentiate between Defendant Triad and Dr. Mason and they do not assert any additional reasons why the Court should not compel arbitration against Dr. Mason.

---

[2] Alternatively, the Court notes that Plaintiffs here agreed to waive the right to bring class actions on claims against Defendants, presumably arising out of their employment. On its face, the Court does not see how this is unconscionable, as parties regularly litigate employment law claims outside of class actions.  Plaintiffs do not explain how this waiver is unconscionable.

9

*See* **Doc. 25.** Therefore, for the reasons stated above, the Court will compel arbitration of the claims asserted against Dr. Mason.

Alternatively, the claims against Dr. Mason should be compelled for the following reasons. Plaintiffs sued Dr. Mason in his official capacity as Director of Defendant Triad. Dr. Mason signed the employment agreements on behalf of Defendant Triad, and is a signatory to the employment agreements, including the arbitration provisions. In other words, Plaintiffs sued Dr. Mason solely in his official capacity based on his acts done within the course and scope of his employment with Defendant Triad. Generally, an official capacity suit is in fact a suit against the entity, Defendant Triad. Because the claims are in fact against Defendant Triad, the Court finds that Plaintiffs agreed to arbitrate those claims, as explained above. *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity…It is *not* a suit against the official personally, for the real party in interest is the entity."); *see also Arnold v. Arnold Corp.-Printed Commc'ns For Bus.*, 920 F.2d 1269, 1282 (6th Cir. 1990) (allowing officers and directors of corporation to enforce corporation's arbitration agreement when "the nonsignatory defendants are alleged to have committed acts related to their running of the corporation"); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1121 (3d Cir. 1993) ("Because a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements.").

**D.     The issue of arbitrability of the claims in this case is for the arbitrator to decide.**

The Court agrees with Defendants that it need not decide whether the specific claims or the motion for preliminary injunction are arbitrable, as the parties clearly and unmistakably delegated arbitrability to the arbitrator.

Generally, the Court determines whether a matter is subject to arbitration unless the parties clearly and unmistakably agreed to arbitrate "arbitrability." *Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1243–44 (10th Cir. 2018). It is well established that "when parties agree that an arbitrator should decide arbitrability, they delegate to an arbitrator all threshold questions concerning arbitrability—including 'whether their agreement covers a particular controversy.'" *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1280 (10th Cir. 2017) (quoting *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)). "Given that parties can agree to arbitrate arbitrability, as well as other issues, questions of arbitrability encompass two types of disputes: (1) disputes about *whether* a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement, and (2) threshold disputes about *who should have the primary power to decide*" whether a dispute is arbitrable." *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1280–81 (10th Cir. 2017) (internal citations and quotation marks omitted). If the Court decides that the parties clearly and unmistakably delegated arbitrability to an arbitrator, the arbitrator determines whether a particular controversy or claim may be arbitrated.

Here, the parties clearly and unmistakably agreed to arbitrate arbitrability because they incorporated the American Arbitration Association ("AAA") rules into the employment agreements. *See* **Doc. 12, Ex. B-1 to B-8, § 18 or § 19** (as applicable) ("The arbitration will be administered by the American Arbitration Association ('AAA') under its Employment Arbitration Rules and Mediation Procedures in effect at the time the claim is filed."); *see also Belnap*, 844 F.3d at 1283 (finding that the parties had clearly delegated the question of arbitrability to the arbitrator by incorporating the JAMs rules into their contract). The relevant AAA rules provide that: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." *See* Section

6a, Jurisdiction, AAA Employment Arbitration Rules and Mediation Procedures, https://www.adr.org/employment (last accessed November 4, 2021).

This provision constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. *See, e.g., Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1281 (10th Cir. 2017) ("Dr. Belnap and SLRMC clearly and unmistakably agreed to arbitrate arbitrability when they incorporated the JAMS Rules into the Agreement."), *citing Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (observing that "[v]irtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability,")*; see also RW Dev., L.L.C. v. Cuningham Grp. Architecture, P.A.*, 562 Fed.Appx. 224, 226 (5th Cir. 2014) (unpublished) (concluding that the parties "clearly and unmistakably agreed to arbitrate arbitrability" by incorporating the AAA rules, despite the fact that the arbitration provision explained that the AAA rules would apply, "unless the parties mutually agree[d] otherwise"). Because the parties agreed to arbitrate arbitrability, the arbitrator should rule on (1) whether the claims in this case fall within the scope of the arbitration provision and (2) whether he or she can rule on the preliminary injunction motion.

Plaintiffs argue that the arbitration clause does not apply to Plaintiffs' claims. **Doc. 25 at 1-2.** Plaintiffs argue that the statutory Title VII and ADA claims do not fall under the arbitration provision, because the arbitration provision does not "clearly express" that statutory claims are within its scope. **Doc. 25 at 2.** The Court believes that issue is for the arbitrator to decide, as explained above. Even if the Court were required to reach this issue, it notes that the statutory claims are likely within the scope of arbitration. Here, the arbitration clause is broad, and the parties agreed to arbitrate "any dispute between the Company and I arising out of or related to my employment with the Company will be submitted to binding arbitration and that I and Triad waive

12

the right to take any such dispute to court. This includes any dispute relating to my employment with the Company, including any separation or termination." **Doc. 12, Ex. B-1 at § 19.** Under a similar broad arbitration clause, the Tenth Circuit has concluded that federal statutory claims were subject to arbitration. *Sanchez v. Nitro-Lift Techs., L.L.C.*, 762 F.3d 1139, 1148 (10th Cir. 2014) ("We therefore hold that plaintiffs' FLSA wage disputes fall within the scope of the arbitration clause."). Plaintiffs cite to *Mathews v. Denver Newspaper Agency LLP*, 649 F.3d 1199, 1205 (10th Cir. 2011), which the court finds inapposite as it is a labor and collective bargaining case.

## II.     Court will let arbitrator rule on preliminary injunctive relief.

Plaintiffs request that the Court issue preliminary injunctive relief, or alternatively request that the Court grant temporary injunctive relief until the arbitrator can decide whether to issue injunctive relief.

Because the Court has ordered arbitration, the Court declines to rule on the motion for preliminary injunction prior to arbitration. Rather, the arbitrator should address preliminary injunctive relief. The parties agreed to arbitrate arbitrability, therefore the arbitrator decides whether he or she may issue preliminary injunctive relief. *A & C Disc. Pharmacy, L.L.C. v. Caremark, L.L.C.*, No. 3:16-CV-0264-D, 2016 WL 3476970, at *6 (N.D. Tex. June 27, 2016). The Court notes that there is nothing in the record to suggest that the arbitrator cannot issue preliminary injunctive relief. Because the arbitrator has the ability to "provide all remedies available in a court of law," the parties agreed that the arbitrator could issue injunctive relief. **Doc. 12 at Ex. B1, 18.**

Under these circumstances other courts have allowed the arbitrator to rule on injunctive relief. *A & C Disc. Pharmacy, L.L.C. v. Caremark, L.L.C.*, No. 3:16-CV-0264-D, 2016 WL 3476970, at *6 (N.D. Tex. June 27, 2016) (declining to rule on injunctive relief prior to arbitration

where parties agreed to arbitrate arbitrability); *Grasso Enterprises, LLC v. CVS Health Corp.*, 143 F. Supp. 3d 530, 544 (W.D. Tex. 2015) (declining to issue preliminary injunctive relief prior to arbitration). At least one case in this district refused to issue injunctive relief where the arbitration agreement did not provide that the parties could seek injunctive relief in court. *See Dawson v. Sw. Multiple Listing Serv., Inc.*, No. CIV-99-0794, 1999 WL 35808950, at *3 (D.N.M. 1999) (ordering arbitration and staying proceedings prior to ruling on plaintiff's request for injunctive relief because, as found in *Dutton*, "in the Tenth Circuit, courts have refused to allow [an injunction proceeding] unless it is specifically agreed to in the arbitration clause").

Some courts which have issued injunctive relief prior to arbitration have done so pursuant to express contractual provisions allowing parties to seek injunctive relief in court. *See, e.g., Optum, Inc. v. Smith*, 360 F. Supp. 3d 52, 54 (D. Mass. 2019), *appeal dismissed*, No. 19-1149, 2019 WL 3564709 (1st Cir. Feb. 27, 2019). This case has no such contractual provision. This distinguishes this case from *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dutton*, 844 F.2d 726, 727–28 (10th Cir. 1988), in which there was an express contractual provision providing that the parties could seek preliminary injunctive relief from a court.

Plaintiffs alternatively request that the Court issue temporary injunctive relief pending arbitration. The Court declines to issue temporary injunctive relief pending arbitration because Plaintiffs request a mandatory injunction. At the hearing, Plaintiffs requested that they be reinstated to their positions and return to work. **Doc. 29 at 51.** Alternatively, Plaintiffs request that they be given additional paid leave days. *Id.* As noted above Plaintiffs have been placed on leave and removed from active employment. Those employees without paid leave days remaining are on leave without pay.

The Court finds that the requested relief would be a mandatory injunction because it "affirmatively require[s] the nonmovant to act in a particular way, and as a result ... place[s] the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction." *Schrier v. Univ. of Co.,* 427 F.3d 1253, 1261 (10th Cir. 2005) (holding that plaintiff's request to be reinstated to employment position was a mandatory injunction). Here, any requested relief would require a mandatory injunction, directing the Defendants to reinstate the Plaintiffs to active employment and reissue them their work equipment, give them new badges, and reassign work that has already been distributed to other employees. Moreover, it would likely require supervision from the Court.

If the Court were to issue preliminary injunctive relief now, it would likely need to rule on the merits of the claims and would require the Court to grant most of the relief requested in the complaint. Temporary injunctive relief under these circumstances would not preserve the meaningfulness of arbitration but would grant Plaintiffs a substantial portion of the relief they seek prior to arbitration. *See, e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dutton*, 844 F.2d 726, 728 (10th Cir. 1988) ("Courts have effectively protected the parties' competing interests by approving initial grants of injunctive relief *pending* arbitration. Yet, Merrill Lynch concedes an injunctive remedy that would deprive an arbitration panel of the full span of its broad authority over the parties and over all arbitrable issues would be contrary to the purpose and limitations of the Arbitration Act and transcend the court's power to preserve the prearbitration status quo.") (internal citations omitted); *see also Cappriolev. Uber Tech., Inc*., 7 F.4th 854, 867 (9th Cir. 2021) (affirming order compelling arbitration where plaintiffs' sought injunction reclassifying them from contractors to employees in advance of arbitration because "the magnitudinous attendant changes to their pay and benefits" would "upend, rather than preserve the status quo" and "would certainly

fail to 'preserve the meaningfulness of the arbitral process.'"); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048, 1053–54 (4th Cir. 1985) ("a district court has the discretion to grant a preliminary injunction to preserve the status quo pending the arbitration of the parties" dispute if the enjoined conduct would render that process a 'hollow formality.'") (internal citations omitted).

The Court recognizes that Plaintiffs are in a difficult position. However, the vaccine mandate was announced on August 23, 2021, and Plaintiffs received notice of their religious accommodation prior to October 15, 2021. Plaintiffs likely could have sought a decision on preliminary injunctive relief from an arbitrator prior to the vaccine mandate taking effect.

### III.   The Court will stay this action pending arbitration.

The Court will stay and administratively close this case pending arbitration. *See, e.g, Sanjevani LLC v. Wells Fargo Bank, N.A.*, No. CV 07-492 BB/LFG, 2007 WL 9733667, at *3 (D.N.M. Aug. 7, 2007) (Black, J.) (staying and administratively closing case pending arbitration). This administrative closure is the functional equivalent of a stay. *See Patterson v. Santini*, 631 F. App'x 531, 534 (10th Cir. 2015) (noting that administrative closure pending arbitration is the functional equivalent of a stay), *citing Mire v. Full Spectrum Lending, Inc.,* 389 F.3d 163, 167 (5th Cir.2004) ("District courts frequently make use of this device to remove from their pending cases suits which are temporarily active elsewhere (such as before an arbitration panel) or stayed (such as where a bankruptcy is pending). The effect of an administrative closure is no different from a simple stay..."). The case will remain closed unless the parties seek to reopen the case, such as to enforce or memorialize an arbitration decision. Because an administrative closure is the functional equivalent of a stay, the parties may move to reopen on the same grounds they would move to lift a stay pending arbitration.

### IV.     Court declines to issue injunction pending appeal.

In the conclusion to their motion for preliminary injunction, Plaintiffs request an injunction pending appeal if the Court declines to issue injunctive relief. **Doc. 5 at 34.** Rule 8(a)(1) of the Federal Rules of Appellate Procedure provides that "[a] party must ordinarily move first in the district court for," *inter alia*, "a stay of . . . the order of a district court pending appeal" or "an order . . . granting an injunction while an appeal is pending." Fed. R. App. P. 8(a)(1)(A), (C). A Rule 8(a) motion for a stay pending appeal "is subject to the exact same standards" as that applicable to a motion for a preliminary injunction. *Warner v. Gross*, 776 F.3d 721, 728 (10th Cir. 2015). A Rule 8(a) motion for an order granting an injunction while an appeal is pending "demands a significantly higher justification than a request for a stay because, unlike a stay, an injunction does not simply suspend judicial alteration of the status quo but grants judicial intervention that has been withheld by [the] court[]." *South Bay Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613 (2020).

Plaintiffs do not give any specific analysis as to why the Court should grant an injunction pending appeal. In ruling on an injunction pending appeal, the Court applies the same standard as that applicable to a motion for preliminary injunction. *Warner v. Gross*, 776 F.3d 721, 728 (10th Cir. 2015). Therefore, for the same reasons as above, the Court declines to enter an injunction pending appeal.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Compel Arbitration (**Doc. 12**) is **GRANTED.**

**IT IS FURTHER ORDERED** that the Court declines to reach the merits of the preliminary injunction motion (**Doc. 4**), as the arbitrator will address the motion. The Court will therefore **DENY** the preliminary injunction motion **WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that the motions for leave to file excess pages (**Docs. 3, 21**) are **GRANTED.**

**IT IS FINALLY ORDERED** that this case is **STAYED** and **ADMINISTRATIVELY CLOSED** pending arbitration.

**IT IS SO ORDERED.**

_____
**KEA W. RIGGS**
**UNITED STATES DISTRICT JUDGE**