IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| RAUL ARCHULETA, ISAAC MARTINEZ, TRINA SUAZO-MARTINEZ, DANIEL FRANK, MICHELLE CORIZ, ADRIANNA MARTINEZ, VALLERIE LAMBERT, and **SAM SPROW**,<br><br>                Plaintiffs,<br><br>v.<br><br>**TRIAD NATIONAL SECURITY, LLC**, d/b/a **LOS ALAMOS NATIONAL LABORATORY**, and **THOMAS MASON**, Director of Los Alamos National Laboratory, in his official capacity,<br><br>                Defendants. | Case No. 1:21-cv-01030 KWR/SCY |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO LIFT STAY
AND ADMINISTRATIVELY REOPEN CASE FOR THE PURPOSE OF
ORDERING CONTINUATION OF CONSOLIDATION
OF THE ARBITRATION PROCEEDINGS**

      Defendants argue that consolidation presents an issue of "procedural arbitrability" that is for the arbitrator to decide. Response at 1. The New Mexico Legislature chose otherwise. Section 44-7A-11 is very clear:

>  (a)     Except as otherwise provided in Subsection (c), upon motion of a party to an agreement to arbitrate or to an arbitration proceeding, ***the court may order consolidation of separate arbitration proceedings*** as to all or some of the claims . . . .
>
> (b)     ***The court may order consolidation*** of separate arbitration proceedings as to some claims and allow other claims to be resolved in separate arbitration proceedings.
>
> (c)     ***The court may not order*** consolidation of the claims of a party to an agreement to arbitrate if the agreement prohibits consolidation.

*Id.* (emphasis added).

      With respect to subsection (a), the New Mexico Legislature has provided that consolidation may be ordered upon a motion of a "party to . . . an arbitration proceeding." In other words, even

after arbitration has commenced, the Court may still order consolidation.

## Consolidation of this Case Should Continue

Plaintiffs' claims were consolidated in a single Complaint.  *See* Doc. 1 and Doc. 9 (Amended Verified Complaint).  If the case had not been referred to arbitration, there would be no question but that they would have continued to proceed as a single case.

In the more than six months since this case was filed on October 22, 2021, every step, including the Arbitrator's rulings on Plaintiffs' request for interim relief and for application of a nationwide federal injunction against enforcing vaccine mandates against federal employees, has been on a consolidated basis.

Significantly, Defendants' Motion to Compel Arbitration [Doc. 12] contained no statement, argument, or request that Plaintiffs be restricted to separate arbitration proceedings.  Defendants' Reply in Support to Motion to Compel Arbitration [Doc. 32] is similarly silent on this issue.

In their Motion to Compel Arbitration, Defendants argued that "New Mexico law governs the enforceability of the arbitration provision in the Employment Agreements."  Defendants' Motion to Compel Arbitration, Doc. 12, at 7.  Defendants further argued that "[t]o determine whether the agreement to arbitrate is valid, courts look to general state contract law, with the caveat that state laws that are hostile to arbitration agreements are preempted by the FAA.'"  *Id*., quoting *Laurich v. Red Lobster Rest., LLC*, 295 F. Supp. 3d 1186, 1206 (D.N.M. 2017).

Now, because New Mexico law allows for an outcome – continued consolidation – that Defendants wish to avoid, they argue that ". . . the inclusion of a general New Mexico choice of law provision in the employment agreement neither incorporates New Mexico's arbitration

procedures nor otherwise supplants the parties' specific agreement in the arbitration provision that the arbitration 'will be administered' pursuant to the AAA's Employment Rules." Response at 11.

Defendants' argument ignores that fact that neither the arbitration provision nor the AAA Employment Rules prohibit consolidation. Nor have Defendants' shown that 44-7A-11 is "hostile" to the arbitration agreement in this case. In the absence of an express prohibition in the AAA Rules, or "hostility" to arbitration, Section 44-1A-11 is applicable.

In their Motion to Compel Arbitration, Defendants insisted that Plaintiffs' claims against Dr. Mason had to be included within the scope of arbitration, because a failure to do so

> ***would result in parallel proceedings involving identical claims and witnesses***, one in arbitration and the other before this Court. ***This would undermine judicial efficiency and cause the unnecessary expenditure of resources*** – which is antithetical to the purpose of arbitration and why it is viewed by New Mexico state and federal courts as 'a highly favored' method of resolving disputes.

Motion to Compel Arbitration, Doc. 12, at 12.

Oddly, having forced Plaintiffs into arbitration Defendants are no longer concerned about "judicial efficiency and . . . the unnecessary expenditure of resources." Instead, they now deny that the case involves "identical claims and witnesses" and assert that "Plaintiffs have failed to carry their burden of showing that the ***highly individualized inquiries associated with their varying claims and damages theories*** and Defendants' defenses to same are proper for a consolidated arbitration hearing on merits." Response, at 2 (emphasis added).

The irony of Defendants' new-found concern over "highly individualized inquiries" into Plaintiffs' individual claims is underscored by Defendants' *refusal* to conduct individualized inquiries of Plaintiffs' particular circumstances and job duties *before* imposing their one-size-fits-all "accommodation" for all employees claiming a religious accommodation to the vaccine mandate whereby they were all placed on indefinite leave without pay ("LWOP"). Indeed,

3

Defendants did not bother to go through the motions of even pretending to interview Plaintiff Trina Suazo-Martinez until the day *after* Defendants announced their LWOP edict. *See* Decl. of Trina Suazo-Martinez, Doc. 5 – 3.  Worse still, they did not bother to interview Plaintiff Sam Sprow *at all* until the Emergency Arbitrator granted a partial preliminary injunction requiring it (at which point it was an entirely futile exercise, of course).  Indeed, one primary reason the Plaintiffs filed this case was Defendants' utter disdain for conducting the individualized assessments required under Title VII.  *See, e.g.,* Amended Verified Complaint, Count I (Failure to Engage in Interactive Dialog). Only now, in the context of opposing the continued consolidation of the claims do Defendants suddenly become interested in *individualized* assessments.

Defendants' *ad hoc* approach to the application of New Mexico law provides neither the parties in this case, nor in any other case, any certainty as to which law applies. Defendants should be judicially estopped from picking and choosing when New Mexico law applies and when it does not.  Defendants should also be judicially estopped from arguing that there are "identical claims and witnesses" and then changing course to argue that each Plaintiff's claims will require "highly individualized inquiries."

In sum, this case began as consolidated and has proceeded as a single case since then. When Defendants asked the arbitrator to order separate arbitration proceedings they were, essentially, asking that the case be de-consolidated.  The arbitrator declined to rule on the issue because under Section 44-7A-11 consolidation is reserved exclusively for the court to decide even when arbitration is already underway.

### Section 44-7A-11 Requires Prohibition, not Agreement

Defendants argue "the parties did not agree to incorporate the consolidation provision of the New Mexico Uniform Arbitration Act into their arbitration agreements."  Response at 2.

4

Defendants are attempting to reverse the actual requirement of Section 44-7A-11(c), which states that "[t]he court may not order consolidation of the claims of a party to an agreement to arbitrate if the agreement ***prohibits*** consolidation." (Emphasis added.)

In other words, the parties do not have to agree to consolidation before the Court may order it. Rather, the Court is prevented from ordering consolidation only when the arbitration agreement prohibits it. The arbitration provision in this case contains no such prohibition.

<b><u>An Affirmative Agreement to Consolidate is Not Required</u></b>

Defendants argue that the choice of New Mexico law does not "supplant[] the parties' specific agreement that the arbitration 'will be administered' pursuant to the AAA's Employment Rules." Response at 11. Defendants are conflating silence with a requirement that the arbitration agreement must contain an affirmative statement permitting consolidation. This is not the law.

The case of *Connecticut General Life Ins. Co. v Sun Life Assurance Co. of Canada*, 210 F.3d 771 (7th Cir. 2000) is instructive . In *Connecticut General*, the Seventh Circuit, Posner, J. stated the issue as follows: "These consolidated appeals ask: When does a federal district court have the power to order the consolidation of arbitration proceedings before a single arbitral panel?" *Id.* at 772. The district court had denied a motion to consolidate several arbitration proceedings involving a contract dispute between between eight different insurance companies. *Id*. The Seventh Circuit reversed and ordered a single, consolidated proceeding.

As in this case, the arbitration provision in *Connecticut General* was silent on the issue of whether "one versus many arbitrations" is for the arbitrators or the court to decide. *Id*. at 773. In deciding that the issue was for the court to decide, Judge Posner noted that "there are compelling practical objections to remitting the questions to the arbitrators . . . . Arbitral panels are *ad hoc*, making it difficult to coordinate their decisions on such a question. And there are no contractual

or statutory provisions for transferring cases between panels, should multiple arbitrations be commenced when the contract envisaged a single consolidated one." *Id*.

Judge Posner also distinguished several cases cited by the proponents of separate arbitration proceedings noting:

> In defending the district court's refusal to order the single arbitration sought by their opponents, the insurers press upon us a series of cases in this and other courts that, they say, hold that a federal district court cannot grant a motion to consolidate separate arbitration proceedings unless the contract on which the arbitration is founded expressly authorizes consolidation . . . . All that these cases actually hold, however, is that unless the contract provides for consolidated arbitration, the court cannot order it.

*Id*.

In support of this statement. quoted from *Government of United Kingdom v. Boeing Co.*, 998 F.2d 68, 72 (2d Cir. 1993). "'Each of our sister circuit courts that has considered the question since these Supreme Court decisions has held that district courts do not have the authority under the FAA to consolidate arbitrations *absent the parties' consent.*"') (emphasis added by 7th Cir.).

The FAA, like the AAA Employment Rules, is silent on the issue of consolidation. In this instance, however, New Mexico law provides for just such a procedure. Section 44-7A-11 is not contrary to the FAA and therefore, is not preempted. Any cases relying on the silence of the FAA (as opposed to a state law) are simply inapposite to this case.

The court in *Connecticut General* held that

> A court can in appropriate circumstances consolidate cases before it (just as we have consolidated the three separate appeals taken from the district court's order), whether or not the parties want the cases consolidated . . . . But it cannot consolidate, transfer, etc. arbitration proceedings in defiance of the parties' wishes or contractual undertakings. . . . But we cannot see a reason why, in interpreting the arbitration clause for purposes of deciding whether to order consolidation, the court should . . . place its thumb on the scale, insisting that it be 'clear,' rather than merely more likely than not, that the parties intended consolidation. It is not as if consolidation of arbitration proceedings were somehow disfavored; quite the contrary – the same considerations of adjudicative economy that argue in favor of

>consolidating closely related court cases argue for consolidating closely related arbitrations. To repeat, the court has no power to order such consolidation if the parties' contract does not authorize it. But in deciding whether the contract does authorize it the court may resort to the usual methods of contract interpretation just as courts do in interpreting other provisions in an arbitration clause. . . . The arbitration provision in this case neither clearly permits nor clearly forbids consolidation. In fact, it's a muddle, suggesting that the parties did not think about the issue. *Id*. at 774.

Finally, the court in *Connecticut General* recognized that there could be several problems in not consolidating arbitration proceedings that involve common questions of law and fact, such as are present in this case.

>To have the identical dispute litigated before different arbitration panels is a formula for duplication of effort and a fertile source, in this case, of disputes over esoteric issues in the law of res judicata (the kind of dispute that would also arise if the question of consolidation were for the arbitrators rather than the district court to answer). If separate arbitrations are ordered and the reinsurers lose the first one, will a decision by that arbitration panel have res judicata or collateral estoppel effect in the other arbitrations? . . . Will it if the first order is confirmed first? . . . . But if the second order is confirmed first?

*Id*. at 776.

### **The Arbitration Agreement Drafted by Defendants Does Not Prohibit Consolidation**

It is undisputed that the arbitration clause at issue in this case was drafted by Defendants, as was the entirety of the offer letter and employment agreement. The arbitration clause does not even mention the word "consolidation," much less purport to prohibit it. Instead, the only provision purporting to waive the types of claims made refers to "class actions," not to consolidation: "I specifically waive **the right to bring or participate in any class action** against the Company, either in court or before an arbitrator." Def. Mot. Compel Arb., Ex. B-1 [Doc. 12-2], at 6 (emphasis added). A class action, which may involve thousands of claimants, is very different than a consolidated action, which in this instance involves only eight (8) claimants.

Defendants were the masters of their arbitration clause. They could have required waiver

of consolidation of claims, just as they required waiver of class actions. But they chose not to. When compared with numerous cases involving explicit waivers of consolidation, Defendants' inexplicable failure to even mention consolidation constitutes strong evidence that the parties did *not* intend to waive it here.

For example, in *Harrison v. Envision Mgmt. Holding, Inc. Bd. of Directors*, No. 21-CV-0304-RMR-NYW, 2022 WL 909394 (D. Colo. Mar. 24, 2022), an ERISA case, the arbitration clause stated, *inter alia*:

> The requirement that (x) all Covered Claims be brought solely in a Claimant's individual capacity and not in a purported group, class, collective, or representative capacity, and (y) that no Claimant shall be entitled to receive, and shall not be awarded, any relief other than individual relief, shall govern irrespective of an AAA rule or decision to the contrary and is a material and non-severable term of this Section 21. **The arbitrator(s) shall consequently have no jurisdiction or authority to compel or permit a class, collective, or representative action in arbitration, to consolidate different arbitration proceedings, or to join any other party to any arbitration.**

*Id*. (emphasis added). In *Harrison*, here was never a dispute as to whether consolidation was permitted, because it was explicitly waived. There are numerous cases with similarly unambiguous waivers of consolidation. *See, e.g., Schmitt v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*, No. 8:21CV11, 2022 WL 671472, at *2 (D. Neb. Mar. 7, 2022) ("**NEITHER YOU NOR WE SHALL BE ENTITLED TO JOIN OR CONSOLIDATE CLAIMS IN ARBITRATION** . . . ."); *Haynes v. Uponor, Inc.*, No. 21-CV-05480-PJH, 2022 WL 541180, at *2 (N.D. Cal. Feb. 23, 2022) ("**NEITHER THE CLAIMANT NOR UPONOR, INC. SHALL BE ENTITLED TO** ARBITRATE ANY CLAIMS AS A REPRESENTATIVE OR MEMBER OF A CLASS, AND NEITHER THE CLAIMANT NOR UPONOR SHALL BE ENTITLED TO **JOIN OR CONSOLIDATE CLAIMS WITH ANY OTHER PARTIES IN ARBITRATION . . . .**"); *Ziglar v. Express Messenger Sys. Inc.*, No. CV-16-02726-PHX-SRB, 2017 WL 6539020, at *1–2 (D. Ariz. Aug. 31, 2017), *vacated and remanded*, 739 F. App'x 444 (9th Cir. 2018)

8

("**Neither you nor SCI shall be entitled to join or consolidate claims in arbitration** by or against other individuals or entities . . . ."); *Valdez v. Bags, Inc.*, No. 16-20390-CIV, 2016 WL 10932513, at *2 (S.D. Fla. June 30, 2016), *report and recommendation adopted*, No. 16-20390-CIV, 2016 WL 10932750 (S.D. Fla. Aug. 22, 2016) ("**Any and all disputes** which may rise or pertain in any way to this Agreement, including any applicable state of federal statutory claims, **shall be submitted on an individual (as opposed to consolidated or class basis)** pursuant to the Federal Arbitration . . . ."). (Emphasis added throughout.)

These and countless other arbitration clauses are explicit and unambiguous in their waiver of the right to consolidate claims. In stark contrast, the arbitration clause drafted by Defendants unambiguously *fails* to prohibit consolidation. Accordingly, this Court should order that the consolidation of Plaintiffs' claims should continue throughout these proceedings.

### The Court Should Lift the Stay to Order Continued Consolidation

Defendants argue that "there is no legal basis under the FAA or otherwise for Plaintiffs to lift the Court's statutorily-mandated stay of these proceedings and reopen this case to argue about purely procedural matters that are reserved for an arbitrator." Response, Doc. 36, at 7. Defendants quote 9 U.S.C. §3 for the proposition that the Court "'shall on application of one of the parties *stay the trial of the action* until such arbitration has been had in accordance with the terms of the agreement. . . .'" Response at 7 (emphasis added). Under a plain reading of the statute, only a "trial of the action" is stayed. The statute in no way prohibits this Court from deciding, under applicable New Mexico law, whether this case should continue to proceed on a consolidated basis.

### Defendants' "Offer" to Permit Some Discovery is Not Relevant to the Issue Before the Court, is Based on Wasteful, Separate Arbitration Proceedings, and Was Short on Necessary Details

Defendants spend several pages in their Response touting their "offer" to proceed with

9

discovery for those Plaintiffs' who have received a right to sue letter. Response at 1 – 2 and 4 – 7. Aside from the fact that the issue is only peripherally relevant to the question of consolidation, if at all, what Defendants do not discuss is that their offer was based on the presumption that there would be eight separate arbitration proceedings; a position that Plaintiffs believe is an unnecessary waste of time, money, and resources in this case.

Defendants' offer was also short on substance. For example, will Defendants permit Plaintiffs to conduct eight separate depositions of Mr. Mason or Dr. Pasqualoni? Will they permit multiple depositions of other officers, directors, and supervisors at LANL? Will they respond to multiple sets of written discovery, or will they take the position that they need only respond once? Given the lack of specifics in the offer and the needless waste of time, money, and resources that conducting discovery in eight separate arbitration proceedings represents, Plaintiffs' failure to accept the offer is entirely justified under the circumstances. [1]

### Defendants Have Failed to Raise any Issue Regarding the Four Requirements for Consolidation Under Section 44-7A-11

**Section 44-7A-11(a)(1)** provides that the Court may order consolidation where,

> there are separate agreements to arbitrate or separate arbitration proceedings between the same persons or one of them is a party to a separate agreement to arbitrate or a separate arbitration proceeding with a third person;

Defendants' Response does not refute that each of the Plaintiffs' employment agreements contain the same arbitration provision. Thus, there are separate agreements to arbitrate. Nor does Defendants' Response refute that Defendants are parties to each of these separate agreements.

Rather than show how Plaintiffs fail to meet the statutory requirement, Defendants rely on

---

[1] Defendants' Response mentions several times that only 2 Plaintiffs have received right to sue letters. As of the date of this Reply, 5 of the 8 Plaintiffs who have received such letters.

10

the unfounded argument that the "employment agreements and accompanying arbitration provisions reflect the parties' intent to arbitrate claims against each other on an individual basis." Response at 9. The simple answer to this argument is that the employment agreements and arbitration provisions reflect no such thing. Rather, to the contrary, the agreements very plainly state that they will be enforced and construed in accordance with New Mexico law. That should be all of New Mexico law and not just those provisions of which Respondents approve.

Defendants further argue that the AAA Employment Rules do not permit consolidation, even though the Construction Industry and Commercial Arbitration Rules do. *See* Response at 10. Once again, Defendants are stretching reality. The fact is that the AAA Employment Rules, like the FAA, are silent on the question of consolidation, neither allowing nor prohibiting it.

**Section 44-7A-11(a)(2)** provides that the Court may order consolidation where

> the claims subject to the agreements to arbitrate arise in substantial part from the same transaction or series of related transactions;

Defendants' Response argues that ". . . the Plaintiffs here assert different claims from each other, with some Plaintiffs asserting solely religious discrimination claims under Title VII and the Constitution, others asserting solely disability discrimination claims under the ADA, and at least one Plaintiff who asserts claims under both." Response at 11. This assertion seriously misreads the Complaint [Doc. 1] and Amended Complaint [Doc. 9]. Moreover, as noted *supra*, this assertion is contradicted by Defendants' earlier insistence that Plaintiffs' claims against Dr. Mason had to be included within the scope of arbitration, because a failure to do so "would result in parallel proceedings ***involving identical claims and witnesses*** . . . ." Mot. Compel Arb., Doc. 12, at 12 (emphasis added).

Defendants also argue that "[d]etermination of the sincerity of certain of the Plaintiffs' religious beliefs will necessarily require an individualized analysis." Response at 12. Aside from

11

the fact that this is highly insulting, Defendants' argument is foreclosed by the fact that they have already *granted* each of the Plaintiffs' requests for a religious exemption. Having recognized that each Plaintiff had a sincere religious objection to being given a COVID-19 "vaccine" Defendants cannot now go back and say "well, maybe we were too hasty," and now we need to examine whether each Plaintiff is sincere in their religious beliefs. Defendants' assertions also emphasize once again their brazen violation of Title VII's requirement for individualized assessments *before* subjecting Plaintiffs to their punitive LWOP "accommodation."

Finally, with respect to 44-7A-11(a)(2), Defendants argue that "an assessment of the reasonableness of an accommodation for one Plaintiff may not be the same as for another . . . ." Response at 12. This tardy admission yet again proves that Defendants have wholly failed to comply with the minimal requirements of Title VII – which is, after all, one of the main reasons Plaintiffs were forced to sue in the first place.

Defendants' Response does not address the last two elements for consolidation to wit:

> (3) the existence of a common issue of law or fact creates the possibility of conflicting decisions in the separate arbitration proceedings; and
>
> (4) prejudice resulting from a failure to consolidate is not outweighed by the risk of undue delay or prejudice to the rights or hardship to parties opposing consolidation.

These elements have, therefore, been conceded.

In sum, Plaintiffs have established that this matter meets all the requirements of Section 44-7A-11. Continued consolidation of this matter is, therefore, appropriate.

## CONCLUSION

For all the foregoing reasons, Plaintiffs' Motion to should be granted.

Respectfully submitted,

LAW OFFICE OF ANGELO J. ARTUSO

By: /s/Angelo J. Artuso
Angelo J. Artuso
P.O. Box 51763
Albuquerque, New Mexico 87181-1763
Telephone: (505) 306-5063
angelo@nmliberty.com

AND

THOMAS MORE SOCIETY

By: /s/B. Tyler Brooks
B. Tyler Brooks†
N.M. Federal Bar No. 21-296
309 W. Washington St., Suite 1250
Chicago, Illinois 60606
Telephone: (312) 782-1680
btb@btylerbrookslawyer.com
† *Admitted in NC, SC, TN & MI.*

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Plaintiffs' Reply was served on all counsel of record by filing the same in the CM/ECF system this 6th day of May, 2022.

/s/ Angelo J. Artuso
Angelo J. Artuso